# Exhibits A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

------------------------------------------------X

BLAKE BEST individually,

**Civ. Action No. 1:12 CV564**

Judge: Michael Ryan Barrett,

Magistrate Judge Karen L. Litkovitz

Plaintiffs,

**FIRST AMENDED COMPLAINT
FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE
RELIEF**

-against-

MOBILE STREAMS, INC., a
Delaware Corporation,
MOBILE STREAMS, PLC.,
a United Kingdom Corporation,
MOBILEFUNSTER. INC.,
a Delaware Corporation
is a wholly-owned subsidiary
of FUNMOBILE LTD,
a Private Limited Liability Company
Hong Kong Corporation,
an individual; CHRISTIAN
KWOK-LEUN YAU
HEILESEN, an individual;
and JOHN DOES 1-22,

Defendants.

------------------------------------------------X



FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-1

# FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

## I. PARTIES

NOW COMES, I Plaintiff/Pro Se Blake Best respectfully request leave, pursuant to Rule 15(a) of the Rules of the court of Federal claims, to file an Amended Complaint. I Plaintiff/Pro Se seek to file a First Amended Complaint to reveal some of the John Does mentioned in the initial complaint and add parties to the copyright infringement, contributory copyright infringement and vicarious copyright Infringement claims and other revisions as applicable to law.

## I. PARTIES

I Plaintiff/Pro Se Blake Best collectively hereinafter ("Best") bring this action against defendants: MOBILE STREAMS, INC., a Delaware Corporation, MOBILE STREAMS, PLC., a United Kingdom Corporation, MOBILEFUNSTER. INC., a Delaware Corporation is a wholly-owned subsidiary of FUNMOBILE LTD, a Private Limited Liability Company. a Hong Kong Corporation, an individual; CHRISTIAN KWOK-LEUN YAU HEILESEN, an Individual; and JOHN DOES 1-22 (collectively "Defendants"), and alleges as follows:

A. ("Best") is a resident Of Ohio whom address is 5392 Northbend Road

Cincinnati, Ohio 45247;

B. Defendant Mobile Streams, Inc. ("Mobile Streams") is a corporation

organized under the laws of the state of Delaware with its principle place of

business address 247 West 36th Street, New York, New York, 10018. Mobile

Streams provides entertainment content, such as music, comedy and other

entertainment, to mobile devices. Mobile Streams has appointed Paracorp

Incorporation, 2140 S Dupont Hwy, Camden, Kent DE 19934 as its agent for

service of process;

C. Defendant Mobile Streams, Plc ("Mobile Streams UK") is a public limited

company organized under the laws of the United Kingdom with its principle place

of Business addresses Abacus House 33 Gutter Lane, London, EC2V 8AR, United

Kingdom. Mobile Streams UK is a leading provider of music and other content to

mobile phones globally; with over 1.5 million internet subscribers;

D.  Defendant Funmobile, Ltd. Is a Private Limited Company with its principle

place of business address of  29/F, One Kowloon No 1, Wang Yuen Street,

Kowloon Bay, Hong Kong. Funmobile, Ltd is a leading ringtone and content

provider which offers entertainment, services to mobile users in Asia, North

America and Europe;

E.  Defendant  Mobilefunster, Inc. is a Delaware Corporation with its principal

place of business address 1555 Chess Drive, Suite 122, in Foster City, California

94404. MobileFunster  has appointed Incorporating Services, Ltd., 3500 S Dupont

Hwy Dover Kent, Delaware 19901, Mobilefunster, Inc. is a wholly-owned

subsidiary of  Funmobile, Ltd, with millions of internet subscribers Worldwide;

 F.  Defendant Christian Kwok-Leun Yau Heilesen, is the founder and CEO of

Funmobile, Ltd. Mobilefunster, Inc. is a wholly-owned subsidiary of Funmobile,

Ltd.  Upon information and belief, defendant uses the aliases "Henrick

Yau", "HKHY Heilesen","Jennie Johnson", "Jennie Smith", "Plasticbrunette",

"Plastic-Jennie" "Scomme","Henrick Y", "Henrick Heile" and others. Christian

Kwok-Leun Yau Heilesen is of Danish nationality whose address is 29/F, One

Kowloon No 1, Wang Yuen Street, Kowloon Bay, Hong Kong;

G. Defendant John Does 1-22, ("Best") is unaware of the true names , address,

and  capacities of defendants sued herein and therefore sues these defendants by

such fictitious names. ("Best") will amend this complaint to allege their true

names address and capacities when ascertained. ("Best") is informed and believes

and therefore alleges that each of the fictitiously named defendants is responsible

in some manner for the occurrences herein alleged, and that ("Best") injuries and

herein alleged were proximately caused by such defendants. These fictitiously

named defendants, together with the named defendants, are herein referred to

collectively as "John Does".

## II. FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTIONAND OTHER EQUITABL RELIEF

I Blake Best individually,  along with my business matters with BCS

Worldwide, Inc. and my copyrighted sound recordings  "Slangtones" (collectively

hereinafter known as ("Best"),  author, ringtone developer, entities set forth in the

caption above (collectively ("Best") or Plaintiff"), through Pro Se, allege, upon

information and belief, for my ("Best") complaint against defendants Mobile

Streams, Inc. and Mobile Streams PLC collectively herein after ("Mobile

Streams") and its predecessors Mobilefunster, Inc, Funmobile Ltd., collectively

hereinafter referred to as "Funmobile" and JOHN DOES 1-22, collectively

hereinafter referred to as "John Does" and CHRISTIAN KWOK-LEUN YAU

HEILESEN individually collectively hereinafter ("Chris"). Defendants have

profited from my copyrighted works, with exceptions Defendants ("Mobile

Streams") and ("Funmobile") have disregarded cease and desist letters. A growing

trend as many artist and musicians such as myself who currently lack funding to

retain counsel, and in many cases many persons or companies who infringe upon

works of arts, never get punished because the artist or musicians lacked financial

resources to retain counsel in matters related to copyright infringement and other

legal matters. COMES NOW, ("Best"), and for my Complaint against

Defendants ("Mobile Streams"), and its predecessors ("Funmobile"), ("Chris")

individually and ("John Does") alleges as follows:

## II.    INTRODUCTION

1.       This is a civil action seeking damages and injunctive relief for

Copyright infringement under the United States Copyright Act pursuant to 17

U.S.C § 101 et seq. This complaint also sites allegations for copyright

infringement, contributory copyright infringement, vicarious copyright

infringement, common law copyright infringement, breach of contract, federal

unfair competition under the Lamham Act, and unfair competition under Ohio law,

and, injunctive relief and to recover, at ("Best") election either actual or statutory

damages, plus discretionary cost and when applicable reasonable attorney's fees

and cost for defendants violations of the Acts arising from defendants willful and

systematic copyright infringement, and facilitation and contribution thereto,

through defendants business operations over the internet. This case is being filed

also; because, ("Best") feels, if nothing is done defendants will continue to infringe

upon my valued copyrighted works and devalue the copyrighted works, for which

a U.S. copyright has been obtained number: PA 1-633-253. True and correct copies

of this registration are attached hereto as Exhibit A and are incorporated by

reference herein.

## III.   NATURE OF DISPUTE

2.        Defendants be it collectively, individually or have some active part to

some of the allegations mentioned herein have engaged in a deliberate effort of

copyright infringement, contributory copyright infringement, vicarious copyright

infringement, common law copyright infringement, federal unfair competition,

Ohio unfair competition, breach of contract and unfair trade practices under Ohio

law, whereby withholding royalty payments which is due ("Best"). In fact,

defendants ("Mobile Streams"), in the pre-sale of tens of millions of ringtones

downloads through its predecessors grossly underpaying royalties to ("Best").

This is a civil action against defendants.

3.      "AT&T" introduced me ("Best") to ("Mobile Streams") so that I

might have a broader market to my catalogue of Slangtones ringtones known

herein as ("Best")"Slangtones".


4.      Defendants ("Mobile Streams") and ("Funmobile") have willfully

infringed on ("Best") copyright by selling ringtones without authorization and

consent, and Defendants ('Mobile Streams") , ("Funmobile"), ("Chris") and ("John

Does") have knowledge of the cease and desist letters which were served on or

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-8

about August 9, 2009 by Honigman Miller Schwartz and Cohn LLP, thereby

unlawfully profiting from the unauthorized use of ("Best") sole and most important

assets: its ringtones.

5.      Indeed, defendant(s) have sold and have profited from the sale of

("Best") most highly regarded and expressly restricted musical sound recordings.

As a result of defendants ("Mobile Streams") obstructive conduct regarding

("Best") audit rights  while their agreements were in full effect, and now that any

agreements by defendants ("Mobile Streams" ) have been cancelled. ("Best") has a

right to know the royalties derived from the sales of its ringtones by defendants,

and also as the result of their continued infringement  after having receiving cease

and desist letters for the unauthorized sales of its valuable copyrights, ("Best") has

been harmed, under pursuant to 17 U.S.C 504(b) and (c).

6.      Defendants ("Mobile Streams"), ("Funmbile),("Chris") and ("John

Does") have possession and were unlawfully selling 12 Sound Recordings

of ("Best"), after knowledge of cease and desist letters they received in 2009. Sales

of ("Best") sound recordings continued to be available for download by defendants

through 2012, for which injunctive relief is sought so that my ("Best") sound

recording are ordered to be removed by defendants ("Mobile Streams")

("Funmobile") , ("Chris") individually and ("John Does").

     7.     October 4th I made another less formal request by electronic means

through email to ask  ("Mobile Streams") , ("Funmobile") and ("Chris") to remove

my ("Best") content. October 5th, 2012, I ("Best") received a response email

from ("Funmobile's) Karen Oei, Senior Vice President of Operations of

Funmobile Ltd., ("Paraphrase ") who indicated that ("Mobile Streams") provided

the content to her company, and the ("Slangtones") content would be removed

immidiateley. Karen Oei forwarded emails to ("Mobile Streams") and Funmobile's

("Chris"). Today the my ("Best") ("Slangtones") content remains for sell through

("Funmobile")  hightly interactive website.

## IV.   SUMMARY OF CLAIMS

8.        ("Best"), is engaged in ringtones and technology, and based on defendants conduct have not continued the practice of producing and copyrighting ringtones. Furthermore the sound recordings were recently removed from the ("AT&T") nework at ("Best") request. Defendants ("Mobile Streams") not rightfully paying ("Best") for the sound recording that defendants ("Mobile Streams") sold through its predecessors and or affiliates, prevented him from marketing his  ringtones.  However collectively defendants delivered ("Best") ringtones to a broad market of wireless carriers with included Canada through a interactive website.

9.        ("Best") sound recordings that can be used as ringtones on customers' cellular phones.  "Best", has secured these rights with the United States Copyright Office. defendants and its predecessors have for years distributed ("Slangtones") recordings under the ("Slangtones") common law trademark, which serves to identify ("Best") in the marketplace as the source of the works which were made available for sale to its predecessors.

10.    ("Mobile Streams") and its predecessors ("Funmobile") , and

("John Does") and its other mobile  operators, provide various types of

downloadable content to consumers, including voice "ringtones" for use on

cellular phones. In this context, a "ringtone" is a digital snippet of voices that a

mobile phone user may select (by downloading defendants "ringtones" to signal

an incoming call.

11.    In accordance with certain license agreements which existed

between ("Best") as licensor, and ("Mobile Streams") as licensees. ("Best")

provided lists of available compositions for licensing and distribution as ringtones

("Best") through the network of ("Mobile Streams"). The licensees agreed to pay a

royalty to ("Best") for every downloaded ringtone. Throughout the term of  the

license agreements, customers downloaded tens of thousands of ("Best") ringtones,

generating substantial revenue for defendants.

12.    Upon information and belief, while Defendants ("Mobile

Streams"), ("Funmobile"), ("Chris") , ("John Does") and its predecessors were

earning tens of thousands in revenue from customers downloading  ("Best")

Ringtones.

13.     Upon information and belief ("Mobile Streams") were failing to keep accurate records of the occurring through services, and failed to account property to ("Best") for the royalties owed. When ("Best") attempted to exercise its contractual rights to go online to review the royalty report, access was denied. ("Best") made verbal request to examine the books and reports to ("Mobile Streams"), who refused to give ("Best") access to material information, interposed frivolous objections to many of ("Best") request, and provided incomplete and inaccurate documentation.

14.     Upon information and belief Moreover, throughout the term of the license agreements which existed, ("Mobile Streams") , blatantly and willfully infringed upon ("Best') numerous valuable copyrights by (i) making ("Best") ringtones available to predecessors that were not on the royalty report list. (ii) permitting worldwide downloading of "Best" ringtones.

15.     Upon information and belief In light of ("Mobile Streams") material breaches of the license agreements, ("Best")  did send email notifications to

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-13

("Mobile Streams") to remove its content in effect cancelling any agreement which may have existed. Although the agreement that existed was unsigned, ("Best") and ("Mobile Streams") acted on the agreement by virtue of the royalty checks and royalty reports that were received by (" Best"). Even after the licensing agreement was expired or cancelled, defendants continued through ("Funmobile"), ("Chris") and ("John Does") to receive revenue from ("Best") ringtones, thereby reaping an unlawful profit from the exploitation of ("Best") sound recordings.

16.      Upon information and belief, ("Chris") individually by virtue of ("Funmobile"), should have been aware of the practices and actions of ("Funmobile") and ("Mobile Streams") seeing that ("Chris") is administrative contact to the domain alleged in the infringement www.funmobile.com and www.funmobileca.com which lead up to these actions. ("Chris") is also principle owner of ("Funmobile") whereby his act would constitute contributory copyright infringement, vicarious copyright infringement under law.

## V.    JURISDICTION VENUE AND PARTIES

17.    This is a civil action seeking damages and injunctive relief for

Copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.; This

Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 131

(federal question); and  28 U.S.C. § 1338 (patents, copyright, trademarks and

unfair competition).

18.    Within this district, and therefore this court has personal jurisdiction

over each defendant because each defendant committed the tortuous conduct

alleged in this complaint in the state of  Ohio, and (a) each defendant has engaged

in continuous and systematic business activity, or has contracted  to supply goods

or services in the state of Ohio.

19..    This jurisdiction of this court is invoked pursuant to 28 U.S.C §

1331 and 1338(a). Venue is proper in this judicial district pursuant to  U.S.C. §

1121, 28 U.S.C. §§ 1331, 1138 and 2201 because it arises, in part, pursuant to 15

U.S.C.  §§ 1114, 1116-1118 and 1125. This court also has jurisdiction over

("Best") common law and state law claims pursuant to 28 U.S.C. § 1367.

20.      Venue is proper in this jurisdiction district pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2) and 1391(c) . Defendants are corporations subject to personal jurisdiction in this district, a substantial part of acts and omissions giving rise to the claims set forth below occurred in the district and intellectual property that is the subject of this action is located and maintained in this district. Defendants by virtue of law outlined above have contact with the state of Ohio through it business dealings and  with myself ("Best").

21.      Further, at all times relevant herein, ("Mobile Streams"), (Funmobile),  ("Chris") individually and ("John Does")  have targeted business efforts into the State of Ohio. Subsequently  I  had a prior agreement entered into ("Mobile Streams") whereby ("Best") is a  resident and citizens of the state of Ohio, thus further making this district the proper venue.

22.      There is a three-factor test for determining when a state may exercise specific jurisdiction over a defendant:(1) the nonresident defendant must purposefully avail itself of the privilege of conducting activities in the forum state;

(2) the claim must arise out of or result from the defendant's forum-related

activity; and/or (3) the exercise of jurisdiction must be reasonable. Brand v.

Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986). The Ninth Circuit adopted a

"flexible approach" to these factors that allows personal jurisdiction to be

established without meeting each of these factors if considerations of

reasonableness dictate. Ochoa v. J.B. Martin & Sons Farms, 287 F.3d 1182, 1189

(9th Cir. 2002). The "purposeful availment" factor is met when the defendant's

actions themselves create a "substantial connection" with the forum state. Burger

King Corp. v. Rudzeqicz, 471 U.S. 462, 477-78 (1985). Such a substantial

connection is found when the defendant sells goods or services in the forum state.

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980).

    23.     Defendants highly interactive e-commerce websites operates to sell

goods and services into the state of Ohio, is directed at Ohio residents, and

constitutes and substantial connection with the state of Ohio. Therefore, defendants

has purposely availed itself of the privilege of conducting activities in Ohio.

Furthermore, the unauthorized copying and selling of ("Best") copyrighted sound recording arises directly out of the activities of defendants highly interactive e-commerce websites.

24.     ("Best') claims arise out of defendants Ohio-related activity not excluding email contacts; were discovery of the subscribers and wireless carriers are necessary to further establish that ("Mobile Stream"), ("Funmobile"),("Chris") and ("John Does") sold my ("Best") sound recording and had contact with the state Ohio as described in (Exhibit B).

25.     The Zippo test has, however, been used in a number of Ohio state and federal cases, as well as in many product liability cases throughout the U.S. that have analyzed internet jurisdictional contacts as to foreign manufacturer defendants.

A. In Edwards v. Erdey 27, for instance, an Ohio woman who flew to the Cayman Islands to obtain a medical procedure that was not approved in the United States was permitted to sue the surgeon in Ohio based, in part, on her visiting the defendant's website and exchanging emails to arrange the surgery.

26.      Jurisdictional arguments can be made: The United Kingdom defendant and Hong Kong defendant could necessarily be based on the same facts alleged against their U.S counterparts. The Courts have personal jurisdictional over ("Mobile Streams") through ("Funmobile"), and the Canadian Web site which is an highly interactive website, were conversely, activity occurring entirely outside the United States may give rise to liability under the Copyright Act if it contributes to subsequent direct infringement occurring within the United States, i.e., a violation of one or more of the exclusive rights set forth in 17.S.C. § 106.

## V.    FACTUAL ALLEGATIONS

### Background

**A. ("Best")**

27.      Plaintiff Owns the Copyright to Slangtones sound recordings copyright registration numbers: PA 1-633-253.

28.      Plaintiff's work is subject to copyright protection for my sound recording entitled "Slangtones" (the "Work"), pursuant to 17 U.S.C. § 101 Is a developer of sound recordings and various music composition or voice compositions through agreement with songwriters, and exploiting those rights

through various licensing arrangement with third parties websites via the Internet.

However ("Best") is noted as author to the works of the sound recordings

mentioned herein, thus allowing ("Best") to develop various licensing

arrangements with third parties namely ("Mobile Streams") These licensing

generated income, where the licensor, songwriters or publishers of the work,

should receive royalties. ("Best") entered into agreements with ("Mobile

Streams") in that he would collecting royalties due on his copyright works.

   29.     I ("Best") developed these ringtones with distribution worldwide

through Nickels Group and ("Mobile Streams"), and have yet to enjoy the true

revenue from the sales of his ringtones because of what is believe to be industry

practices, and exploitation by various ringtones companies by sending ("Best")

licensed ringtones to other predecessors who were not included in the royalty

reports provided to the ringtone providers or licensors, in essence the licensor

namely ("Mobile Streams") would enjoy 100% royalty through its predecessors of

unreported royalty sales to the licensor.

30.     The Internet allows enormous opportunities for copyright infringement of artists works and musical compositions to be infringed and exploited. There are countless numbers of websites selling ringtones and songs of copyrighted works, which compensation is never realized by the artist. I ("Best") believe the industry have a practice "If the artist don't, know don't tell". Allowing some companies that license musical works to not report the sales to the artists. Now the only way for the artist to learn that their works are being infringed upon, is to do Internet key searches in hopes to uncover evidence of their work being infringed upon. This is what I ("Best") did initially in 2009 and uncovered a vast amount of websites selling my ("Best") content which was not on the royalty reports provided to by ("Mobile Streams"). At which point, I ("Best") then inquired to ("Mobile Streams") of this new found evidence of my ("Best") ringtones being sold on sites not being reported on the royalty reports they provided. Whereby, ("Mobile Streams") denied any claim that they provided my ("Best") content to the sites in question.

31.     ("Best") is the owner of copyrights in and to the musical

compositions at issue and have complied in all respects with the copyright acts and

with all other applicable laws in securing copyright registrations and protecting and

maintaining exclusive rights in and to these ("Best") Sound Recordings. Upon

information and belief, ("defendants") have unlawfully made thousands from

("Best") "sound recordings available for downloading through its predecessors.

Certain of the sound recordings for which plaintiffs asserts their claim of copyright

infringement, together with their respective copyright registration numbers: PA 1-

633-253.


32.     By virtue of my ("Best") Sound Recordings, skill and diligence in

maintaining my ("Best") catalogues, I ("Best") have developed substantial good

will and generated substantial value in the sound recordings which comprise my

("Best") valued U.S. Copyrighted catalogues.

## B. ("Mobile Streams")

33.      Upon information and belief, defendant Mobile Streams, Inc.

("Mobile Streams") is a corporation organized under the laws of the state of

Delaware with its corporate offices located in New York, New York Mobile

Streams is a provider of media entertainment content, such as music, comedy and

other entertainment, to mobile devices. a provider and publisher of mobile

content, products and services that assist customers with finding personalization

and entertainment for mobile phones. ("Mobile Streams") provides media

products, content and related services to mobile operators that allow the mobile

operators to use their ("Third-Party Websites) to deliver content, including

ringtones, to mobile subscribers. defendant owns and operates an intent delivery

website whereby providing content to its third party affiliates and/or predecessors

who operate subscription based websites located on the World Wide Web.

Defendant in part through its affiliates and/ or predecessors provides customers

access to copyrighted ringtones for a per download or subscription fee to

download ringtone content to their mobile devices.

## C. ("Funmobile")

34.     Defendant Funmobile, Ltd. Is a Private Limited Company.

Mobilefunsters, Inc. is a wholly-owned subsidiary of Funmobile, Ltd. with its

principle place of business in the United States and Hong Kong.  Funmobile is a

leading ringtone and content provider which offers entertainment, services to

mobile users in Asia, North America and Europe, with millions of internet

subscribers Worldwide.

## D. ("Mobilefunster")

35.     Defendant  Mobilefunster, Inc. is a Delaware Corporation a wholly

owned subsidiary of Funmobile, Ltd. with its principal place of business in Foster

City, California. Mobilefunster is one of the leading providers of mobile

entertainment.  Upon information and belief, through their website located at

www.funmobile.com and  (www.funmobileca.com) , "Funmobile" also provides

media products and content, including ringtones directly to consumers.

Mobilefunster, Inc. is a wholly-owned subsidiary of Funmobile, Ltd.

**E. ("Chris")**

36.     Defendant Christian Kwok-Leun Yau Heilesen, is the founder and CEO of Funmobile, Ltd. Mobilefunster, Inc. is a wholly-owned subsidiary of Funmobile. He is also the registrant administrative and technical contact of the domain www.funmobile.com and funmobileca.com Exhibits below.

37.     Upon information and belief, ("Mobile Streams") acquires the content that it makes available to its customers through licensing agreements with content owners.

38.     Upon information and belief, in or about April 2006, ("Best") and ("Mobile Streams") entered into an agreement, whereby that agreement has been since cancelled as agreed by both parties. The agreement, entered as a one-year ringtone license covering the World.  Pursuant to the Ringtone License, ("Best") granted a license to Mobile Streams, whereby ("Mobile Streams") agreed to

license certain catalogues of music compositions of which ("Best") owned and/or controlled the music publishing rights. ("Mobile Streams") provided Slangtones' ringtones to their network of internet providers. This would allow ("Best") ringtones to be made available to consumers for downloading into wireless devices.

39.      Defendants ("Funmobile) have undertaken numerous steps to obfuscate their identities including the use of several addresses and aliases such as, Funmobile 88621, Funmobile US, Funmobile 8383 Limited and others.

## The "Blake Best" Ringtones Licenses

### A. The Ringtone License

40.      On or about June 12, 2006, ("Best") and defendant ("Mobile Streams") entered into a one-year ringtone license with auto renewed, with the exceptions of cancellation by notice.(the "Ringtone License") covering the World. Pursuant to the 2006 Ringtone License, ("Best") granted a license to ("Mobile Streams") whereby ("Best") agreed to license its Slangtones catalogue of

sound recordings for which ("Best") owned and/or controlled the exclusive rights. In accordance with the ("Ringtone License"), ("Best") granted ("Mobile Streams") the right to transmit the Slangtones sound recordings through its network of internet providers. Slangtones catalogue was then made available to consumers for downloading onto wireless phones. The License agreement was not signed because ("Best") wanted additional provisions to be added. Meanwhile we acted on a verbal agreement, which included ("Best") receiving royalty reports and payments from ("Mobile Streams") In return for the grant of rights for approved Slangtones sound recordings, ("Mobile Streams") was to pay ("Best") an agreed upon royalty rate for each Slangtones Ringtone downloaded by a consumers.

## A. COUNTS and CAUSES OF ACTION

## COUNT I

## (First cause of Action Copyright Infringment
## 1976, 17 U.S.C. § 101 et Seq.)

41.　　　　("Best") set forth herein and attached below, Slangtones ringtones,

snap shot of the willful infringing act, showing titles of Slangtone's ringtones each

listed under the copyright registration provided herein, with time and date stamp

shown at bottom right corner of picture. This snap showing defendant

("Funmobile") U.S. and Canadian website.

42.　　　　Early August 2009, ("Best") discovered through an Internet
Search of his sounding recordings, copyrighted works 'Slangtones"; that

various websites were not reported on the ("Mobile Streams") royalty report.

Moreover, these websites were exploiting his work unlawfully. ("Best") later

on or about August 9, 2009 sought counsel to provide to those websites cease and

desist letters. These letters would stop these sites from further infringement,

whereby requesting that

these websites provide evidence of sales of ("Best") sound recording Slangtones.

("Mobile Steams") was then made aware that any agreements between parties

("Best"), would be cancelled. Whereby, ("Mobile Streams") agreed to such

cancellation and was advised to have all content provided to third party providers

be removed, and that a sales report outlining sales from these sites of ("Best")

sound recording Slangtones, be provided. After counsel finished their copyright

infringement investigation it was made known that ("Mobile Streams") provided

these websites in question with ("Best") sound recording Slangtones.

43.     It would be understood by one ordinary person that such

communications using counsel in this matter should have made ("Mobile

Streams") aware that any further sales of ("Best") sound recording Slangtones by

any of its third party providers or predecessors would constitute willful

infringement. Since this notice the defendants ("Mobile Streams") and

predecessors defendants have been enjoying the revenue of the sales of ("Best")

sound recording, and have continue its infringement up to date, just a few months

away from the cutoff point of the statute of limitations set by law. Whereby they

would continue to allow its users and or subscribers to continue to purchase

Slangtones rigntones free of reprisal. It is my intention to seek action and relief in

his matter that this may not continue to happen. Each of defendants of copyright

infringement referenced herein were willful within the meaning of 17 U.S.C. §

101, et seq.

44.    ("Best") has been damaged and is entitled to, at their election,

either their actual damages and  defendant's profits from the infringing activities

described herein, or, in the alternative, statutory damages to 17 U.S.C §, et seq.

("Best") are further entitled to their attorney fees and cost pursuant to 17

U.S.C. § 505.

## COUNT II

### (Second Cause of Action Contributory Copyright Infringement 17 U.S.C § 106)

45.    ("Best") hereby adopt reallege and incorporate by reference the

allegations contained in  paragraphs 1 through 44 above, which defendants

infringes upon ("Best") exclusive rights secured by 17 U.S.C. § 106.59.

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-30

Defendant(s) has explicit and constructive knowledge that said infringements are

taking place and actively induces, facilitates, causes and materially contributes to

said infringements.

46.     As a result of the forgoing, defendant(s) ("Mobile Streams")

("Funmobile"),("Chris") and ("John Does") are liable for contributory infringing

Plaintiffs' copyrighted sound recordings, in violation of Sections 106 and 501 of

the Copyright Act. Each instance whereby each separate sound recording

embodying a sound composition owned by plaintiffs displayed, performed and /or

distributed by users of ("Funmobile"), ("Chis"), ("John Does") and/or ("Mobile

Streams"), whether downloading, streaming, uploading or sharing, constitutes a

separate act of copyright infringement and a separate violation of 17 U.S.C. 101, et

seq., for which defendant(s) is liable. Each act of copyright infringement

referenced herein was willful within the meaning of 17.US.C. 101, et seq.

47.     ("Best") have suffered economic damage and irreparable harm as a

result of the continuing acts of infringement referenced herein, and unless and until

defendant's conduct is enjoined by this court, defendant will continue to cause

irreparable injury that cannot fully be compensated for or measured in money, and

("Best") is accordingly entitled to an injunction pursuant to 17 U.S.C. § 502

prohibiting further infringement of their exclusive right under the Copyright Act.

48.     ("Best") have been damaged and is entitled to, at their election,

either their actual damages and defendants profits from the infringing activities

described herein, or, in the alternative, statutory damages pursuant to 17 U.S.C.

§ 101, et seq. ("Best") is further entitled to their attorney fees and cost

pursuant to 17 U.S.C. § 505.


## COUNT III

### (Third Cause of Action Vicarious Copyright Infringment
### 17 U.S.C § 106)

49.     ("Best") hereby adopt, reallege and incorporate by reference the

allegations contained in Paragraphs 1 through 48 above. Defendant(s) ("Mobile

Streams") , ("Funmobile"), ("Chris") and ("John Does")  users and subscribers are

actively infringing ("Best") copyrighted Sound compositions, as set forth herein,

by downloading, uploading, streaming and sharing recordings embodying said

sound recording compositions through and/or ("Mobile Streams"), which infringes

upon ("Best") exclusive rights secured by 17 U.S.C. § 106. Defendant(s) has

derived direct and substantial financial benefits from the infringements of

("Best") copyrighted sound compositions by defendants as described herein.

50.     Defendants ("Mobile Streams"),("Funmobile") and ("Chris") have

the legal right and actual ability to supervise, control and prevent the infringing

activities that occurred but has and or refused to exercise and control over the

infringing activities.  As a result of the foregoing, defendants' are liable for

vicariously infringing ("Best") Copyright sound compositions, in violation of

Sections 106 and 501 of the Copyright Act.

51.     Each instance whereby each separate sound recording embodying a

Copyrighted sound composition owned by ("Best") was copied, displayed,

performed and/or distributed by users of ("Funmobile") and ("John Does") ,

whether downloading, streaming, uploading or sharing, constitutes a separate act of

copyright infringement and a separate violation of 17. U.S.C 101, et seq., for which

defendant is liable. Each act of infringement referenced herein was willful within

the meaning of 17 U.S.C. 101, et seq.

52.     ("Best") have  suffered economic damage and irreparable harm as a result of  the continuing acts of infringement referenced herein and unless and until conduct is enjoined by this court, defendant will continue to cause irreparable injury that cannot fully be compensated for or measured in money, or Plaintiffs are accordingly entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of their exclusive rights under the Copyright Act.  ("Best") are entitled to, at their election, either their actual damages and defendant's profits from the infringing activities described herein, or, in the alternative, statutory damages pursuant to 17 U.S.C. § 101, et seq. ("Best") is further entitled to their attorney fees and cost pursuant to 17 U.S.C § 505.

## COUNT IV

### (Fourth Cause of Action Common Law Copyright Infringement)

53.     ("Best")  realleges the allegations set forth in paragraphs 1-52 above with the same force and effect as if set forth fully herein.  Slangtones sound recording which is copyright protected is subject to common law copyright protection under Ohio. As the owner of valid common law copyrights in

for the Sound Recording of Slangtones, ("Best") possesses the exclusive rights to

sell, copy, distribute and perform these sound recordings. The infringement of

("Best") rights in each of its Sound Recording constitutes a separate and distinct

act of infringement. As a direct and proximate result of defendants violation of

("Best") rights in and to the Sound Recordings, ("Best") has suffered damages in

an amount to be proven at trial. ("Best") is entitled to recover all proceeds and

other compensation received or to received by defendants arising from its

infringement of ("Best") sound recording, and is entitled to an accounting to

ascertain the amount of such profits and compensation. Defendant acts of

infringement are willful, intentional and purposeful, in disregard of ("Best")

rights, and ("Best") is entitled to punitive and statutory damages in addition to

actual damages. ("Best") is further entitled to their attorney fees and cost

pursuant to 17 U.S.C§ 505.

## COUNT V

## (Fifth Cause of Action Breach of Contract
## Ohio Revised Code Section 2305.06)

54.        ("Best") restates and incorporates each of the preceding paragraphs

as if fully set forth herein. ("Best") satisfied all of its obligations under the

Agreement requesting that the agreement between the parties be cancelled in

lieu of the infringement act  by the parties.  The use by ("Mobile Streams") and its

predecessors ("Funmobile") beyond the scope of use described in the ("Mobile

Streams") agreement was unauthorized and constituted a material breach of the

agreement whereby. ("Best") has sustained damages as a result of the copyright

breach of  contract  by ("Mobile Streams") and their predecessors ("Funmobile.")

55.        WHEREFORE,  ("Best") prays for findings of breach of contract

and judgment in its favor and against defendant ("Mobile Streams") and its

predecessors ("Funmobile") Failing to keep accurate records of the downloading

occurring through their services and failed to account property to ("Best") for the

royalties owned. When ("Best")  then attempted to exercise its contractual rights to

examine ("Mobile Streams") books and records ("Mobile Streams") refused to

give ("Best") access to material information, interposed frivolous objections to

many of ("Best") request, and provided incomplete and inaccurate documentation.

56.     ("Best") performed its duties to the agreement prior to these

allegations.

57.     ("Best") has been injured by Defendants' ("Mobile Streams")

breaches in an amount to be proven at trial.

## COUNT VI

### (Six Cause of Action Federal Unfair Competion
### Under Lanham Act, 15.U.S.C. §125(a))

58.     15 U.S.C  §1125 (a) ("Best") incorporates each and every

allegation of paragraph 1-57 of this complaint as through fully set forth

herein. Defendants' and its predecessors ("Funmobile") use of Slangtones

Sound Recordings, in connection unlawfully and infringing sales of thousands

of downloads. Defendants have infringed upon the sound recordings of

("Best") after being aware of any agreements upon the parties, which have

been cancelled, and cease and desist

letters were made a party to this action, with the knowledge of infringement being made known to ("Best") , who then refrained from further development of the brand name Sound Recordings. These infringement acts damaged the good will of the name herewith.  These actions allowed defendants to gain an unfair competitive advantage over ("Best") continued development of any additional sound recordings.

59.　　The acts of defendants alleged above were committed willfully, with knowledge of ("Best") rights and with the intention to deceive and mislead plaintiff and the public. The acts of defendants alleged above were committed willfully, with full knowledge of ("Best") rights with the intention of causing harm to ("Best"). The acts of defendants alleged above were committed willfully, with full knowledge of ("Best") rights with the intention of misappropriating and wrongfully receiving revenue for the works of the Sound Recordings of ("Best") which effected the valuable goodwill and reputation of ("Best") Sound Recordings

Slangtones. ("Best") have suffered economic damage and irreparable harm as a result of unfair competition in its practice and deceptive use of the Slangtones trade name.

60.     ("Best") is entitled to, at their election, either their actual damages and in the alternative, statutory and punitive damages.

61.     ("Best") is further entitled to their attorney fees and cost pursuant to 17 U.S.C. § 504.

## COUNT VII

### (Seventh Cause of Action
### Unfair Competition Under Ohio Law)

62.     ("Best") incorporates each and every allegation of Paragraphs 1-61 of this Complaint as though fully set forth herein. Defendant's use of the Slangtones Sound Recordings after having had full knowledge of Cease and Desist Letters, was unlawfully and a willful act. The conduct of defendants, as alleged herein, constitutes unfair competition under the common law of Ohio.

63.    Defendants' conduct has been deliberate and willful and has been committed with the intent to evade paying royalties to ("Best") who has suffered economic damage and irreparable harm as a result of defendants unfair practices associated herein. ("Best") are entitled to, at their election, either their actual damages or, in the alternative, punitive and statutory damages. ("Best") are further entitled to their attorney fees and cost pursuant to 17 U.S.C. § 504.

## COUNT VIII

### (Eight Cause of Action
### Deceptive and Unfair Trade Practices Under Ohio Law
### Ohio Rev. Code, § 4165.02)

64.    ("Best") incorporates each and every allegation of Paragraphs 1-63 of this Complaint as though fully set forth herein. Upon information and belief, throughout our dealings ("Mobile Streams") knowingly and intentionally provided royalty statements to ("Best"), in which the reported number of downloads of ("Best") were significantly less than the true number of downloads.

65.     Upon information and belief, ("Mobile Streams") knowingly and intentionally  provided royalty statements to ("Best") that failed to account for downloads  occurring Worldwide;

66.     Streams therefore falsely reported to ("Best")  the number of downloaded  "Slangtones Ringtones" within the licensed territories and worldwide, as well as the amount of royalties paid to ("Best");

67.     Upon information and belief, ("Mobile Streams") knowingly and intentionally provided a royalty report of placement of Slangtones ringtones; however it was later discovered through infringement investigation that ("Mobile Streams") also provided Slangtones ringtones to providers not listed on the royalty report. Results infringement investigation. Based upon the infringement investigation of third party websites unlawfully selling plaintiffs copyrighted ringtones, defendant ("Mobile Streams") was receiving royalties due plaintiff. In fact defendant ("Mobile Streams") failed to report for 5 third party websites and

one such third party website, indicated in paraphrase ("Mobile Streams") provided

us with your content." Whereby evidence will show that ("Mobile Streams")

earlier indication that this third party's website was not their authorized content

distributor.

68.     A result of this deceptive and unfair trade practices under Ohio law,

("Best") has been damaged in an amount to be determined at trial, plus punitive

damages and interest. ("Best") is further entitled to their attorney fees

and cost pursuant to 17 U.S.C. § 504.

## A. Prayer for Relief

WHEREFORE, ("Best") respectfully pray for judgment against the defendants' as

follows:

69.     On all Counts, for such equitable relief as is necessary to prevent or

restrain infringement of ("Best") copyrights, including a permanent injunction

requiring defendant and its agents, servants, employees, officers, directors,

attorneys,

successors, assigns, licensees, and all others in active concert or participation

with any of them cease infringing, or causing, aiding, enabling, facilitating,

encouraging, promoting, inducing, or materially contributing to or participating in

the infringement of any of ("Best") copyrights or exclusive rights protected by

the Copyright Act or common law (whether now in existence or hereafter

created), including, without limitation, the compositions referenced on the

Exhibits attach hereto;

70.     On Counts I, II, III and IV an award to ("Best"), at their election, of

either actual and profits derived by defendant as a result of the infringing activities

described herein, pursuant to 17 U.S.C § 504(b) or (ii) statutory damages in the

maximum amount of $150,000 per each act of infringement of ("Best")

copyrighted works, pursuant to 17 U.S.C. § 504(c);

71.     On Counts V and VIII, an award to ("Best"), as a result of

defendants wrongful acts;

## B. Jury Demand

("Best") respectfully requests a trial by jury on all issues triable thereby.

Date this 23rd day of November, 2012.

Respectfully and humbly submitted,

Signature                                    Date

Blake Best **Pro Se**
5392 Northbend Road
Cincinnati, Ohio 45247
513-768-2282
blake@bcs24hrs.com

# EXHIBIT A.
## (Copyright Registration)

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**PA 1-633-253**

Effective date of
registration:

June 17, 2009

## Title

**Title of Work:** Slangtones

**Contents Titles:** 1. Pick up It's The little

2. What's Crackalackin

3. Its yo baby naa

4. Hey Shorty it's yo girl calling

5. Thats that broad Ga Guy

6. Pickup The Phone Daddy Oh Girl

7. Pick up Gangster Oh Girl

8. No Restricted Calls Ga Guy

9. I Got The llingerie

10. PickUp Ganster Oh Girl

11. Im Feeling You Oh Girl

12. Pick That Thang Up Ga Guy

13. Spanish Guy 1

14. Pickup The Phone Playa

15. Spanish Guy 2

16. The Battle

17. You Dirty Pick Up the Phone Ohio Girl

18. Mommy Pick Up

19. This Yo Boy Oh Guy

20. Lady You Home

21. Hear You Getting That Money Oh Girl

22. Im in Love With A Stripper

23. DaDa Baby Boy

24. What Crackalackin

Page 1 of 3

25. This Yo Boy
26. You Beem Served Oh Guy
27. You Sleeping To Hard
28. You On That One Way Oh Guy
29. Im In Love With A Stripper
30. Whatup Dude MI Guy
31. You Been Served Pick it up MI Girl
32. Thats that broad Ga Guy
33. Shorty Pickup MI Guy
34. Smoking On Piff
35. Baby Slang
36. You Have An Important Call
37. Pick This Piece Up
38. My Street Life
39. 911
40. Big Mama House

## Completion/ Publication

| | |
|---|---|
| Year of Completion: | 2003 |
| Date of 1st Publication: | June 20, 2006 | Nation of 1st Publication: United States |

## Author

| | |
|---|---|
| Author: | Blake Best |
| Author Created: | sound recording |
| Citizen of: | United States | Domiciled in: United States |

## Copyright claimant

| | |
|---|---|
| Copyright Claimant: | Slangtones |
| | 6063 Town Vista Drive, Cincinnati, OH, 45247, United States |
| Transfer Statement: | By written agreement |

## Rights and Permissions

| | |
|---|---|
| Organization Name: | BCS Worldwide/Slangtones |
| Name: | Blake Best |
| Email: | blake@bcs24hrs.com | Telephone: 5133-489-6400 |
| Address: | 5392 Northbend Road |
| | Cincinnati, OH 45246 United States |

## Certification

| | |
|---|---|
| Name: | Blake Best |
| Date: | January 13, 2009 |

# EXHIBIT B.
## ("Funmobile's U.S. website)



| | | | |
|---|---|---|---|
| Skin | Skinnyman | Sky Balls | Skylock Ranger |
| Skylar Grey | Slade | Slena | Slam |
| Slangtones | Slank | Slayer | Slester-Kinney |
| Sleepy Brown | Sleepy D | Sleepy Jackson | Sleep |
| Sleigh Bells | Slick Pulla | Silent Scream | Slim Dusty |
| Slim Thug | Slimm Chance | Slinkee Minx | Slipknot |
| Slipmatz | Slum Village | SM Salon | Small |
| Small Faces | Small S | Small Sins | Smartz |
| Smash Mouth | Smashing Pumpkins | Smashmouth | Smiley |
| Smut | Smith Westerns | Smiths | Smitty |
| Smokey Robinson | Smokey Robinson & the Miracles | Smokey horkil | Smoot |
| Smutti | Snag | Sneaker Pimps | Sneaky Sound System |
| Sneha Khanwalkar | Snica Drive | Sniper | Snooker |
| Snoop Dogg | Snot | Snow | Snow Patrol |
| So Solid Crew | Soca Warners | Soda Club | Soda Stereo |
| Sofax | Sofia Jane | Sofia Essaidi | Soft Cell |
| Soil | Sokolofas | Solanos | Solar Sai |
| Sofar | Solianta, Grata ir Sol | Solid State Revival | Solly Mobole |
| Solo Thea | Solu Music | Sommar Varje Da | Son ky Four |
| Son al Dark | Sonata Artica | Sonic Youth | Sandra Lercha |
| Sandjuvla | Sonic The Hedgehog | Sonic Youth | Sanders Nacional |
| Sorigua | Sonta Alden | Sonny | Sonny and Cher |
| Sorny 2 | Sonny O Brien | Sonohra | Sonora Santanera |
| Sorora | Sons of Adam | Sons Aixam | Soogofly |
| Sophie Ellis Bextor | Soorano | Sorrya | Soul Asylum |
| Soul Avengers | Soul Central | Soul II Soul | Souli,ID |
| Soularts | Soulja Boy Tell'em | Soulshaker | Soulmen |
| Soundalikes of Babylonon | Soundbwoy Ent | Sous De Losa | Source |
| South Park | Southside Spinners | SP | Space |

# EXHIBIT C.
## ("Funmobile" Canadian website)

FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-51



FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF Civ. Action No. 1:12 CV564-52