UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BLAKE BEST,
    Plaintiff,

v.

MOBILE STREAMS, INC., *et al.*,
    Defendants.

Case No. 1:12-cv-564

Barrett, J.
Litkovitz, M.J.

ORDER

This matter is before the Court on plaintiff's motion to disqualify counsel for defendants Fun Mobile, LTD. (Fun Mobile) and Mobilefunster, Inc. (Mobilefunster), Dinsmore & Shohl, LLP, Karen S. Hockstad, Esq., and Nita L. Hanson, Esq. (Doc. 39), defendants Fun Mobile and Mobilefunster's memorandum in opposition (Doc. 49), and plaintiff's amended reply memorandum. (Doc. 51). Plaintiff seeks disqualification of Fun Mobile and Mobilefunster's counsel and the law firm of Dinsmore & Shohl on the basis of an alleged conflict of interest arising from a prior attorney-client relationship between plaintiff and Dinsmore & Shohl. For the following reasons, plaintiff's motion to disqualify counsel is denied.

**I. Background**

Plaintiff Blake Best, proceeding pro se, brings this action against defendants Mobile Streams, Inc., Mobile Streams, PLC, MobileFunster, Fun Mobile, Christian Kwok-Leun Yau Heilesen, and various John Does alleging copyright infringement and other related claims. Plaintiff alleges that defendants have infringed on copyrights held by him by profiting from sales of his musical works and not paying him royalties. (Doc. 46 at 6-12). Plaintiff now seeks the disqualification of Fun Mobile and Mobilefunster's counsel and the law firm of Dinsmore & Shohl on the basis of a conflict of interest existing between plaintiff and Dinsmore & Shohl.

Plaintiff asserts that he was represented by William Sherman II, Esq., of Dinsmore & Shohl over ten years ago on an unrelated intellectual property matter. (Doc. 39 at 9). Plaintiff further relates that he contacted Mr. Sherman via email in August 2012, after filing the instant lawsuit, in an attempt to secure legal representation in this matter. *Id.* Plaintiff claims that he shared confidential information in his email to Mr. Sherman which could be used by defense counsel to disadvantage plaintiff. *Id.* at 10.

In opposition, counsel for Fun Mobile and Mobilefunster contend that plaintiff's motion should be denied because: (1) Ms. Hockstad and Ms. Hanson were not affiliated with Dinsmore & Shohl at the time the firm represented plaintiff; (2) the entities owned by plaintiff, and not plaintiff himself, are the real parties in interest in this case and they were not represented by Dinsmore & Shohl; and (3) plaintiff's prior representation by Mr. Sherman was unrelated to the issues in the instant lawsuit. (Doc. 49). In support, counsel has submitted affidavits from Ms. Hockstad and Mr. Sherman. Ms. Hockstad attests that she and Ms. Hanson joined Dinsmore & Shohl in 2012 and had no prior affiliation with the firm. (Doc. 49 at 10-11, ¶¶ 2-3, Declaration of Karen S. Hockstad). Further, Ms. Hockstad states that upon being contacted by Fun Mobile and Mobilefunster and again after reviewing plaintiff's allegations of a conflict, she had the firm perform checks to determine if any conflicts of interest existed; both checks were negative for a conflict. *Id.* at ¶¶ 4-5. Ms. Hockstad's understanding is that there was no conflict returned because plaintiff is not a listed client of Dinsmore & Shohl. *Id.* at ¶ 6. Mr. Sherman attests that in 1994 and 1995 while working for Dinsmore & Shohl, he represented plaintiff in an intellectual property matter but has done no work for plaintiff since that time. (Doc. 49 at 12-13, ¶ 2, Declaration of William A. Sherman, II). Mr. Sherman further avers that plaintiff failed to make payments to Dinsmore & Shohl for this representation and, consequently, the unpaid fees for the

legal work were written off by the firm in 1998. *Id.* at ¶ 3. Mr. Sherman is aware that plaintiff attempted to contact him and share documents, but states that he did not review any documents submitted by plaintiff and declined to respond to plaintiff's request for representation. *Id.* at ¶ 4. Mr. Sherman spoke to plaintiff on only one occasion shortly before plaintiff filed the instant motion at which time he stated to plaintiff that plaintiff was not a client of his or of Dinsmore & Shohl and that he could not speak to plaintiff about the facts of the instant litigation. *Id.* at ¶ 5. Mr. Sherman attests that the previous work done for plaintiff is unrelated to the legal issues in this case and that he has not disclosed any client information to Ms. Hockstad or Ms. Hanson during his review of the pleadings associated with this litigation. *Id.* at ¶¶ 7, 9.

In reply, plaintiff contends that the instant litigation is "substantially the same" as the infringement matters handled by Dinsmore & Shohl on his behalf in 1994. (Doc. 51 at 6). Further, plaintiff argues that because a Dinsmore & Shohl receptionist informed him that he had a client number, a conflict exists. *Id.* at 7. Plaintiff also speculates that the email he sent to Mr. Sherman was read by Mr. Sherman and used in preparing defendants' legal strategies. *Id.* at 7-8.

## II. Legal Standard

In contrast to its previous practice of relying on common-law precedent, the Sixth Circuit now relies primarily on the codified Rules of Professional Conduct in determining questions of lawyer disqualification in a given case.[1] *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436

---

[1] For this reason, the Court declines the parties' invitation to apply the three factor common law test set forth in *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990), which provides for disqualification where (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. The undersigned also notes that this Court has not applied the *Dana* test in two recent cases addressing attorney disqualification issues. *See R.E. Kramig Co., Inc. v. Resolute Management, Inc.*, No. 1:07–cv–658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (Dlott, C.J.); *OneBeacon America Ins. Co. v. Safeco Ins. Co.*, 1:07–cv–358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (Weber, J.).

(6th Cir. 2007) ("applying these accepted rules will lead to greater uniformity and predictability with regard to the ethical code of conduct"). For purposes of this case, the Ohio Rules of Professional Conduct govern whether disqualification of counsel is warranted because of a conflict of interest arising from the representation of a former client. *See OneBeacon America Ins. Co. v. Safeco Ins. Co.*, 1:07–cv–358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (Weber, J.) (citing *Yates v. Dicks,* 209 F.R.D. 143, 150 (S.D. Ohio 2002) (Spiegel, J.)). *See also* S.D. Ohio Civ. R. 83.3(f) (providing that the conduct of attorneys and the supervision of their conduct in this Court "shall be governed by the Model Federal Rules of Disciplinary Enforcement," which in turn provide that this Court abides by "the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits.").[2]

The duty of a lawyer to a former client is governed by Ohio R. Prof. Conduct 1.9, which provides:

> RULE 1.9: DUTIES TO FORMER CLIENTS
>
> (a) Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.
>
> (b) Unless the former client gives informed consent, confirmed in writing, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client where both of the following apply:
>
> (1) the interests of the client are materially adverse to that person;
>
> (2) the lawyer had acquired information about the client that is protected by Rules 1.6 and 1.9(c) and material to the matter.

---

[2] Ohio adopted the Rules of Professional Conduct in 2007 to replace the Ohio Code of Professional Responsibility. *See Carnegie Cos., Inc. v. Summit Properties, Inc.*, 918 N.E.2d 1052, 1060 (Ohio App. Ct. 2009).

    (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter do either of the following:

        (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known;

        (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

Ohio R. Prof. Conduct 1.9.

"The use of the term 'shall' in Rule 1.9(a) requires mandatory disqualification when those circumstances defined therein are present." *R.E. Kramig Co., Inc. v. Resolute Management, Inc.*, No. 1:07–cv–658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (Dlott, C.J.) (citing *OneBeacon,* 2008 WL 4059836, at *2). The term "substantially related matter" as used in Rule 1.9(a) is defined as "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Conduct 1.0(n).

The Ohio Rule of Professional Conduct governing the disqualification of law firms is found in Rule 1.10: IMPUTATION OF CONFLICTS OF INTEREST: GENERAL RULE:

    (a) While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

    (b) When a lawyer is no longer associated with a firm, no lawyer in that firm shall thereafter represent a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, if the lawyer knows or reasonably should know that either of the following applies:

> (1) the formerly associated lawyer represented the client in the same or a substantially related matter;
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) When a lawyer has had substantial responsibility in a matter for a former client and becomes associated with a new firm, no lawyer in the new firm shall knowingly represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.
>
> (d) In circumstances other than those covered by Rule 1.10(c), when a lawyer becomes associated with a new firm, no lawyer in the new firm shall knowingly represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:
>
> (1) the new firm timely screens the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;
>
> (2) written notice is given as soon as practicable to any affected former client.
>
> (e) A disqualification required by this rule may be waived by the affected client under the conditions stated in Rule 1.7.
>
> (f) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

Ohio R. Prof. Conduct 1.10.

## II. Analysis

In the instant case, there is no question that plaintiff is a former client of the law firm Dinsmore & Shohl. "An attorney-client relationship includes the representation of a client in court proceedings, advice to a client, and any action on a client's behalf that is connected with the law." *Hamrick v. Union Tp., Ohio*, 79 F. Supp.2d 871, 875 (S.D. Ohio 1999) (citing *Landis v. Hunt*, 610 N.E.2d 554, 558-59 (Ohio Ct. App. 1992)). The test of whether an attorney-client relationship was created is "essentially whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative

client." *Id.* (citing *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 611 N.E.2d 873, 876 (Ohio Ct. App. 1992)). The parties agree that plaintiff was a former client of Dinsmore & Shohl. Plaintiff states that he was a client of Dinsmore & Shohl in or around 1995. (Doc. 51 at 3, Plaintiff's Amended Reply Memorandum).[3] Further, Mr. Sherman, an attorney with Dinsmore & Shohl from at least 1994 to the present, attests that he represented plaintiff in 1994 and 1995. (Doc. 49 at 12, ¶ 2). In light of these representations, the Court finds that an attorney-client relationship existed between plaintiff, Mr. Sherman, and Dinsmore & Shohl in 1994 and 1995. Thus, under Ohio Rules 1.9 and 1.10, Dinsmore & Shohl and its attorneys are prohibited from representing another client "in the same or a substantially related matter in which [that client's] interests are materially adverse to the interests of [plaintiff]." Ohio R. Prof. Cond. 1.9(a). *See also* Ohio R. Prof. Cond. 1.10 (if any one attorney from Dinsmore & Shohl is disqualified under Rule 1.9, then the entire firm must be disqualified from representation). Accordingly, the Court must now determine if the instant litigation is "the same or substantially related" to Dinsmore & Shohl's previous representation of plaintiff. If yes, then Dinsmore & Shohl and its attorneys must be disqualified from representing defendants Fun Mobile and Mobilefunster in this matter. *See R.E. Kramig Co*, 2009 WL 1395342, at *4.

Ohio Rule 1.9(a) prohibits a lawyer from representing a client in a matter substantially related to a matter involving another client where that person's interests are materially adverse to the interests of the former client. A substantially related matter "involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in the representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Cond. 1.0(n). Knowledge

---

[3] Plaintiff's factual statements contained in his brief and reply memorandum are given the force and effect of sworn statements as he has declared the statements to be true and correct "under penalty of perjury." *See* 28 U.S.C. § 1746.

-8-

of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude representation, and the nature of the services performed for the former client is enough to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. Ohio R. Prof. Cond. 1.9, Comment (3). The burden of proof lies with the party seeking disqualification, who need only show that the matter or cause of action of the previous representation of the former client is substantially related to the matters of the current suit. *OneBeacon*, 2008 WL 4059836, at *3.

Plaintiff states that his previous attorney-client relationship with Dinsmore & Shohl and Mr. Sherman involved a dispute between plaintiff and another attorney, Dennis Redic, over a patent license and monies allegedly owed plaintiff over the sale of the license. (Doc. 51 at 3). Plaintiff asserts that Mr. Sherman sent correspondence to and conferred with Mr. Redic in an attempt to resolve the dispute. *Id.* Plaintiff argues that as the instant lawsuit involves claims that he is owed payments from defendants for copyright infringement, these matters are substantially similar and that counsel for Fun Mobile and Mobilefunster must be disqualified.

In opposition, Mr. Sherman and counsel for Fun Mobile and Mobilefunster have provided affidavit evidence that the instant litigation is unrelated to the previous work done for plaintiff by Dinsmore & Shohl. *See* Doc. 49 at 10-13. Mr. Sherman attests that he has no knowledge of this case or its underlying subject matter outside of his review of plaintiff's complaint and amended complaint, which he reviewed only in order to respond to the instant motion to disqualify. (Doc. 49 at 13, ¶¶ 6, 8). Mr. Sherman also attests that the work performed for plaintiff previously is unrelated to plaintiff's instant claims and that he has "been careful not to disclose any client information to Ms. Hockstad or Ms. Hanson" in his review of the pleadings. *Id.* at ¶¶ 7, 9.[4]

---

[4] The undersigned notes that Mr. Sherman is not listed as counsel for Fun Mobile or Mobilefunster on this Court's docket.

Given the above facts and representations, the undersigned concludes that there is no basis for disqualifying Ms. Hockstad, Ms. Hanson, or the firm of Dinsmore & Shohl from their representation of Mobile Funster and Funmobile in this action. Although Mr. Sherman represented plaintiff over 15 years ago, there is no basis upon which to conclude that that matter is substantially related to this case. Plaintiff's assertion that the previous patent license dispute is substantially related to the instant litigation simply because it involved plaintiff's intellectual property rights claims (notably, against a non-party) is insufficient to establish a substantial relation under the Ohio Rules of Professional Conduct. Further, Mr. Sherman affirmatively avers that the matters are unrelated, that he did not read the "confidential information" sent to him by plaintiff, and that he has taken care to not disclose any client information to Ms. Hockstad or Ms. Hanson. Plaintiff has failed to controvert those attestations with evidence.[5] Accordingly, plaintiff has not met his burden of demonstrating a substantial relation between the instant litigation and the action involved in the previous representation and his motion to disqualify must be denied.

---

[5] To the extent plaintiff states the email he sent to Mr. Sherman was read by Mr. Sherman and used by defense counsel in this case, plaintiff has presented no evidence whatsoever to support this assertion. Plaintiff's speculation as to Mr. Sherman and defense counsel's conduct is insufficient to meet his burden of proof. Nor may the Court conclude that an attorney-client relationship was formed by the mere sending of an email purportedly containing confidential information to Mr. Sheman such that disqualification of defense counsel is appropriate. "The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 798 N.E.2d 369, 372 (Ohio 2003). The instant facts demonstrate that plaintiff did not believe that an attorney-client relationship existed between him and Mr. Sherman or Dinsmore & Shohl. Plaintiff states that he contacted Mr. Sherman "to see if Dinsmore & Shohl *could* represent me . . . ." (Doc. 39 at 9). Further, plaintiff affirms that Dinsmore & Shohl was one of several firms plaintiff attempted to retain. *See* Doc. 51 at 4 ("Dinsmore & Shohl was in fact *among a few firms contacted* regarding my present legal matters.") (emphasis added). Given plaintiff's sworn statements, the evidence supports a finding that plaintiff was simply seeking representation at the time he sent the email and did not believe that he had an attorney-client relationship with Mr. Sherman or Dinsmore & Shohl such that disqualification of defense counsel is justifiable.

## III. Conclusion

For the above reasons, plaintiff's motion to disqualify counsel (Doc. 39) is **DENIED**.

Date: 1/9/2013

Karen L. Litkovitz
United States Magistrate Judge