UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

-------------------------------------------X

BLAKE BEST  individually          )
                                  )
          Plaintiff,              )     Case No. 1:12 CV564
                                  )     Honorable Senior Judge
          vs.                     )     Sandra S. Beckwith
                                  )
   AT&T Inc. et al.,              )     Honorable Magistrate
                                  )     Karen L. Litkovitz
                                  )
   Defendants .                   )     JURY DEMAND
                                  )
                                  )
                                  )
                                  )     FOURTH  AMENDED
                                  )     COMPLAINT FOR PERMANENT
                                  )     INJUNCTION AND OTHER
                                  )     EQUITABLE RELIEF
                                  )      JURY DEMAND

# **FOURTH AMENDED COMPLAINT**

Pro Se/Plaintiff hereinafter Plaintiff (as defined below) submit this Fourth Amended Complaint pursuant to the Honorable Courts September 16, 2014 Order, AT&T Inc. and AT&T Mobility LLC collectively ("AT&T"). however plaintiff's pending Objection to the  Report & Recommendations (Doc. No 204), awaits this Honorable Courts resolution relative to AT&T Inc's. motion to dismiss, nevertheless as Ordered, Plaintiff have adjusted it's pleadings in this Fourth Amended Complaint to show AT&T Mobility LLC's liability as instructed (Doc. No. 203), as to:

1. Counts I, V: Copyright Infringement Under 17 U.S.C. §§ 101,106, 501 and Ohio Common Law Copyright Infringement.

"Order specifying how AT&T Mobility was involved in the unauthorized copying of this copyrighted materials and any other conduct which allegedly infringed on plaintiff's copyright."

2. Counts VI: Unfair Competition under Lanham Act

"Order specifying under which prong his Lanham Act claim arises and alleging the specific conduct or statements by AT&T Mobility that form the basis of this claim."

3. Counts VII and VIII: Unfair Competition under Ohio Law Deceptive and Unfair Trade Practices under Ohio Rev. Code § 4165.02

"Order which includes factual allegations of the specific conduct that AT&T Mobility engaged in that forms the basis of his common law unfair

competition and statutory ODTPA claims and, further, which indentifies the specific sections of the ODTPA under which his claim arises."

4. Count IX: Unjust Enrichment

"Order that comports with the pleading requirements for stating a claim for unjust enrichment under Ohio law consistent with this Order."

1.    This is a civil action seeking damages and injunctive relief for Copyright Infringement 1976, 17 U.S.C. §§101,106, 501, Inducement of Copyright infringement 17 U.S.C. §106, Contributory Copyright Infringement 17 U.S.C. §106, Vicarious Copyright Infringement 17 U.S.C. §106, Common Law Copyright Infringement, Federal Unfair Competition Under Lanham Act 15.U.S.C§ 125, Unfair Competition Under Ohio § 4165.02, Deceptive and Unfair Trade Practices Under Ohio Law Ohio Rev. Code § 4165.02(A) and Unjust Enrichment.

## I.    INTRODUCTION

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a short and plain statement of the claim showing that the pleader is entitled to relief so as to give the defendant fair notice of the claim and the grounds upon which it rests. The Supreme Court has interpreted this rule to require factual allegations sufficient to demonstrate that a claim is plausible on its face. Courts must construe the complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on

its face." Twombly, 550 U.S. at 555. The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." Id. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

2.    Plaintiff created and sold ringtone content, designed to be transmitted over wireless carrier's network to and from mobile devices. Plaintiff was seeking to become the first African American Aggregator to transmit ringtones through major wireless carriers through the assistance ("AT&T") and Civil Rights Activist Joseph Beasley and Southern Regional Direction Rainbow Push Coalition. Plaintiff is author of the United States copyright through its sound recordings. Defendants directly through its network along with it aggregators copied, reproduced and or distributed without authorization Plaintiff Slangtones mark as its aggregators Funmobile, Mobilefunster. defendant had access to plaintiff's work, and (2) the defendant's work has probative similarity. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 9822d 693, 701 (2d Cir. 1992) (requiring "substantial similarity").

3.     As such plaintiff's sound recordings and its Slangtones mark and copyrighted sound recordings, are being infringed by a recently discovered wireless carrier Credo Mobile who were recently served with a Cease and Desist letter. In their response they "claimed the Blake Best Slangtones content is merely hosted on their third part affiliate iLoop Mobile, Inc. website which was active only in 2008, and the links shown below are not functional. Nevertheless they have requested that iLoop Mobile, Inc. remove the content." However all of the content on their website which appears to be themed after Plaintiff's www.slangtones.com remains, and still bares the Slangtones content. Their website is functional to preview the Slangtones content, which is similar to Plaintiff's content after previewing and titled the same "Lady U Home" and "Mommy Pickup" which has been copied, and is linked to the Credo Mobile website.   "Lady U Home" and "Mommy Pickup" were also featured on ("AT&T"'s) website. see Exhibit Credo Mobile: Participating mobile operators:

"Currently T-Mobile, AT&T, and Sprint PCS (not available on all storefronts) support ringtones and wallpapers. AT&T and Sprint also support Java games. We will announce new participating as they join."

http://dev.credoweb.mblade.iloopmobile.com/faq.ftl#Q10

link to plaintiff ringtones See

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63643

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63639

Although Credo Mobile counsel denies its involvement in any alleged wrongdoing, this only exemplifies yet another example of the practices of plaintiffs' content being copied and offered for sale without authorization through the ("AT&T") / AT&T Mobility network.

4.. Plaintiff commenced this action on July 25, 2012 to seek damages for unlawful copyright infringement and other actions. Upon review of the informal discovery and evidence. Plaintiff added AT&T Inc. and AT&T Mobility LLC, to its third amended Complaint after default judgment was enter against its aggregators Funmobile Ltd. /Mobilefunster Inc. and Mobile Streams Inc. Mobile Streams a direct aggregator of AT&T Inc. and AT&T Mobility LLC, who submitted plaintiff's ringtones to Funmobile Ltd. Mobilefunster Inc. and other carriers. Plaintiff also submitted his sound recordings to AT&T Inc. and AT&T Mobility LLC.

5. Plaintiff is informed and upon such information alleges AT&T Inc. and AT&T Mobility "aggregators" were copying and selling Plaintiffs copyrighted sound recordings through their network as such AT&T Inc. and AT&T Mobility directly had access to plaintiff's work, the work has probative similarity. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993), subjecting AT&T Inc. and AT&T Mobility LLC, to direct infringement. In *Playboy Enterprises, Inc. v. George Frena, d/b/a/ Techs Warehouse BBS Systems and Consulting, and Mark Dyess*, 839 F. Supp.1552 (M.D. Fla. 1993), the court granted summary judgment for direct copyright infringement against a bulletin board service ("BBS") which allegedly did not have any prior knowledge that its users uploaded and downloaded files to its server containing Playboy Enterprises, Inc.'s pictures without plaintiff's consent or other justification. Defendant BBS allegedly removed all infringing files when it was notified and subsequently monitored the server, but the court held lack of knowledge was not a defense.

6.    Plaintiff is informed and upon such information alleges according to the fact, Plaintiff has uncovered information suggesting that AT&T Inc. and AT&T Mobility LLC, retained a direct profits from the infringing acts while declining to exercise a right to stop or limit it. Furthermore, AT&T Inc. and AT&T Mobility LLC had the capacity to supervise the infringing activity. Plaintiff corresponded to ("AT&T") that Plaintiffs' ringtones were being infringed by its third party "aggregators." Whereas, Plaintiff suggested ways AT&T Inc. and AT&T Mobility LLC could implement an effective system at minimum cost to prevent third party "aggregators" from infringing content through their network.

7.    Plaintiff is informed and upon such information alleges according to the fact an, example of the likely network: Customer A visits a operated by mobile content provider that sells ringtones for $1 to $3 each. Customer A enters his or her wireless telephone into a field on the website, and the desired ringtone is sent through a network to his or her wireless device. Mobile content provider then sends Customer A's telephone number and the responding charge information to a billing aggregator (a middleman of sorts who has relationships with major wireless carriers such as (AT&T, Sprint and T-Mobile). The aggregator, in turn, instructs Customer A's wireless carrier to place the charge on Customer A's cell phone.

8.    Plaintiff, was engaged in ringtones and technology, and based on Defendants conduct have not continued the practice of producing or promoting any ringtones. Furthermore Plaintiff sound recordings were removed from AT&T Inc. and AT&T Mobility's website and network network at Plaintiffs request on or about Wednesday, October 24, 2012.

9.    Plaintiff is informed and upon such information alleges according  to the fact, and now evidence reveal AT&T Inc. and AT&T Mobility LLC share in the liability, while one aggregator  was authorized to sell Plaintiffs ringtones through their network to ("AT&T") subscribers, another aggregator Mobile Streams through Funmobile/Mobilefunster were selling Plaintiffs' ringtones AT&T Inc. and AT&T Mobility LLC were  received a direct profit. Upon recently discovering AT&T Inc. and AT&T Mobility LLC "aggregators" were infringing Plaintiff's ringtones through their network from profits, it became apparent why ("AT&T") had a different set of Plaintiffs' authorized ringtones on its network then the "aggregators"  had on their own site which was unauthorized. It also became clear to Plaintiff why AT&T Inc. and AT&T Mobility LLC provided Plaintiff with a short code and placed its  ringtones where it was hard for subscribers to find, because  their "aggregators"  were unlawfully selling Plaintiff's ringtones allowing AT&T Inc. and AT&T Mobility LLC to gain a profit.

10.    Plaintiff is informed and upon such information alleges according  to the fact,  Plaintiffs' initial catalogue of ringtones showed strong sales in AT&T's "What's Hot" then they were removed and a second set of Plaintiff's catalogue were uploaded to the AT&T site which were hard to locate by their subscribers.  Plaintiff believes, this was a tactic to allow the "aggregators" to sell Plaintiffs ringtones through AT&T's network, where there would be no confusion of sales from  Plaintiff's  ringtones by their  "aggregators"

11.  In 2008, while Plaintiffs' authorized copyrighted sound recordings, were featured in AT&T's  "What's Hot", it demonstrated

popularity with steady sales, which were described by AT&T's Senior VP as good "seeing that yours ringtones are not from a known celebrity."

12.   Plaintiff is informed and upon such information alleges according  to the fact, Plaintiff's  ringtones sound recording were popular after having survived, AT&T's test market, were Plaintiff was notified through email by ("AT&T's") Attorney Timothy Johnson, that Plaintiff's ringtones may be removed, if the outcome of the study is not successful. Upon email notification Attorney Johnson notified Plaintiff that the marketing department will allow Plaintiff's ringtones to remain. Further evidence proves  ("AT&T") subscribers, customers and/or users purchases showed of steady sales during this period.

13.   Plaintiff is informed and upon such information alleges according  to the fact, due to  the infringement and practices of Defendants and their "aggregators" , Plaintiff would have enjoyed tremendous success with his copyrighted sound recordings. It would seem if Plaintiff's copyrighted sound recordings, were not popular and had very minimum sales, then why  would the ("AT&T")  "aggregators" continue to feature Plaintiff's ringtones for sales, after multiple request in 2009 followed with a cease and desist letters and repeated request in 2012 for them to be removed preventing the actions set forth in this complaint?

14.   ("AT&T") "aggregators" also delivered Plaintiffs ringtones to  Canada wireless carriers through  interactive websites and through the network of AT&T. Plaintiff have sustained, and continue to sustain, substantial financial losses and  irreparable injury, namely

future copyright  infringement and violation of its trade name

Slangtones, it is likely through these actions plaintiff cannot become

an aggregator, generally the content of the alleged

 misrepresentations giving rise to Plaintiff's Lanham act claim.

15.    Plaintiff is informed and upon such information alleges
according  to the fact, Plaintiffs' Copyrighted sound recordings that
can be used as ringtones on customer's mobile phones, has secured these
rights with the United States Copyright Office.  ("AT&T")  "aggregators"
have for years distributed Plaintiff's copyrighted sound recordings.
Plaintiff's "Mark"  is Slangtones which serves to indentify Plaintiff in the
marketplace is the source of the works which are unlawfully
made available for sale to millions of subscribers.

## II. NATURE OF DISPUTE

16.    Plaintiff is informed and upon such information alleges
according  to the fact, ("AT&T")  have profited from Plaintiffs' copyrighted
works, disregarding knowledge that their  "aggregators"  were
infringing on Plaintiff copyright and that ("AT&T") share in the liability,
had knowledge or participated in the acts as reflecting matters since the
filing of the original complaint. A growing trend as many artist
and musicians such as Plaintiff who currently lack funding to
retain counsel, and in many cases, many persons or companies
who infringe upon works of arts, never get punished because the artist
or musicians lacked financial resources to retain counsel in matters
related to copyright infringement.

17.     Plaintiff is informed and upon such information alleges according to the fact, ("AT&T") be it collectively, or individually have some active part to the allegations mentioned herein have engaged in a deliberate effort to copyright infringe and committed other acts and violations as outlined herein. Defendants "aggregators", in the pre-sale of tens of millions of ringtones downloads through its affiliates grossly  underpaying royalties to Plaintiff. This is a civil action against Defendants.

18.     Plaintiff is informed and upon such information alleges according  to the fact, ("AT&T") introduced Plaintiff to Mobile Streams so he might have a broader market to his copyrighted sound recordings. Now ("AT&T") share part in the liability of the dispute, because they were made aware their "aggregators"  were profiting from Plaintiffs' ringtones, including its sells through Bell Mobility HSPA network known as Bell Canada, and they did nothing to stop the infringement upon which they received some financial benefit.

19.     Plaintiff is informed and upon such information alleges according  to the fact , Defendants ("AT&T") have willfully infringed on Plaintiff copyright when they had knowledge of the infringing acts by assisting it's "aggregators" in selling Plaintiffs' ringtones without authorization and consent, and their "aggregators",  had knowledge of the cease and desist letters which were served on or about August 9, 2009 by Honigman Miller Schwartz and Cohn LLP, and Defendants thereby unlawfully profited from the unauthorized use of Plaintiffs sole and most important assets its ringtones, as such ("AT&T") indirectly had access to plaintiff's work, and (2) the ("AT&T")  work has probative

similarity. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993);

20.    Plaintiff is informed and upon such information alleges according  to the fact,  indeed, Defendants(s) have  profited from the sale of Plaintiffs' most highly regarded and expressly restricted musical sound recordings. As a result Defendant aggregator Mobile Streams obstructive conduct regarding Plaintiffs' audit rights while their agreement were in full effect, and now that any agreement by ("AT&T")  aggregator  Mobile Streams have been cancelled. Plaintiff has a right to know the royalties derived from the sale of  its ringtones by Defendants, and also as the result of their actions not to stop their "aggregators" from infringing after knowing there "aggregators"  received cease and desist letters for the authorized sales  of its valuable  copyrights, Plaintiff has been harmed,  pursuant to 17 U.S.C § 504(b) and (c).

21.    Plaintiff is informed and upon such information alleges according  to the fact , October 4th, 2012 Plaintiff made another less formal request by electronic   means through email to ask ("AT&T")  "aggregators"  to remove Plaintiff's content. October 5th, 2012, Plaintiff received a response email from Fumobile's Karen Oei, Senior Vice President of Operations of  Funmobile Ltd, ("Paraphrase") who indicated that Mobile Streams provided the content to her company. She noted the content would be removed immediately. Karen Oei forwarded emails to Mobile Streams and Funmobile's Christian Kwok-Leun Yau Heilesen. Here Funmobile's Karen Oei, has clearly

1
2
3
4
5
6
7
8

established "access" to Plaintiff's copyrighted sound recordings
which were at all times substantially similarity and were copied
and sold to subscribers, customers and/or users through
Fumobile's/Mobilefunster's highly interactive websites to sell
Plaintiff's sound recording to millions of AT&T mobile devices. as such
("AT&T") indirectly had access to plaintiff's work, and (2) the ("AT&T")
work has probative similarity. *See, e.g., Gates Rubber Co. v. Bando*
*Chem. Indus*., 9 F.3d 823, 832 (10th Cir. 1993);

9
10

## III.  PARTIES

11
12
13
14
15

22.     Plaintiff/Pro Se Blake Best hereinafter  ("Plaintiff")  bring
this  action  against: AT&T, Inc., a Delaware Corporation and AT&T
Mobility, LLC, a Limited Liability Company is a wholly-owned subsidiary of
AT&T, Inc. collectively hereinafter ("AT&T") and John Does 3-50

16
17

A.        Plaintiff  is  a  resident  Of Ohio whom  address is
5392 Northbend Road Cincinnati, Ohio 45247;

18
19
20
21
22
23
24
25

C. .    Plaintiff is informed and upon such information
alleges according  to the fact, that  Defendant s AT&T, Inc. who is a
Delaware corporation hereinafter ("AT&T") with its principle place of
business at 208 Akard Street, Dallas Texas 75202 and regularly does
business throughout  this judicial district. AT&T's registered agent
for service of process in Delaware The Corporation Trust Company
1209 Orange  Street  Wilmington, New Castle DE 19801.

26
27
28

D.     Plaintiff is informed and upon such information
alleges according to the fact. Defendant AT&T Mobility LLC, formerly

named Cingular Wireless, LLC, is a Delaware Limited Liability
company with its principal place of business at 1025 Lenox Park
Blvd, NE, Atlanta Georgia 30319 and does business throughout
this judicial district. AT&T's registered agent for service of process
in Delaware is The Corporation Trust Company, 1209 Orange
Street, Wilmington New Castle DE 19801. AT&T Mobility, LLC is
a wholly-owned subsidiary of AT&T, Inc. hereinafter ("AT&T").

## IV. SUMMARY OF CLAIMS

23.    Plaintiff is informed and upon such information alleges
according  to the fact, ("AT&T") are liable for the infringement acts through
Copyright Infringement  1976,  17 U.S.C. §§101,106, 501, Inducement of
Copyright Infringement 17 U.S.C. §106, Contributory Copyright
Infringement 17 U.S.C. §106, Vicarious Copyright Infringement 17 U.S.C.
§106), Common Law Copyright Infringement, Federal Unfair Competition
Under Lanham Act 15.U.S.C§ 125,  Unfair Competition Under Ohio Law §
4165.02, Unfair Trade Practices Under Ohio Law Ohio Rev. Code §
4165.02, Unjust Enrichment.

## V. JURISDICTION VENUE AND PARTIES

24.    Plaintiff is informed and upon such information
alleges according  to the fact , This is a civil action seeking damages
and injunctive relief for Copyright  infringement under the Copyright Act,
17 U.S.C § 101 et seq. The Court has personal jurisdiction over
("AT&T") because they do   systematic and continuous business in
Ohio, and has performed acts directed at and causing harm in
Ohio which gives rise to this Complaint. Venue is proper in this

District pursuant to 28 U.S.C § 139(b), (c) and 28 U.S.C § 1400(a).

This Court has subject matter jurisdiction over Plaintiffs' Copyright

Act  claims under 28 U.S.C. §§ 1331, 1332, and

2201. This Court has personal jurisdiction over ("AT&T") under the

test established in Calder v. Jones, 465 US 783 (1984), applying

Colo. Rev. Stat. § 13-1-124. Venue is proper in this District under

28 U.S.C. § 1391 (b). This Court has jurisdiction over the federal

claims in this action under the Trademark laws of the United

States, Lanham Act Sections 32, 39, 43(a), and 43 (c)(I),

15 U.S.C. §§ 1114, 1121 and 1125(a)(c)(1), the Copyright Act,

 17 U.S.C.§ 101  et seq and the Judicial Code of the United States, 28

U.S.C. §§ 1331, 1338(a) and (b). This Court has supplemental jurisdiction

over any common law and state statutory claims under 28 U.S.C. § 1367.

("AT&T") by virtue of law outlined above have contact with the state

of  Ohio through interactive  websites geared to Ohio residents.

25.    Plaintiff is informed and upon such information

alleges according  to the fact , further, at all times relevant herein through

its interactive website ("AT&T") have targeted business efforts into

the State of Ohio, subsequently Plaintiff had a prior agreement

 entered into with a  ('AT&T') aggregator Mobile Streams whereby

Plaintiff is resident and citizen of the state of Ohio, thus further making

 this district the proper venue. ("AT&T") highly interactive

e-commerce website operates to sell goods and services into the state

of Ohio, is directed at Ohio residents, and constitutes

a substantial connection with the state of Ohio. Therefore, ("AT&T")

has purposely availed itself of the privilege of conducting activities in

Ohio. Furthermore, the unauthorized copying and selling of Plaintiff's

copyrighted sound recordings arises directly out of the activities of its "aggregators" through its network and/or receiving profits from highly interactive e-commerce websites allow ("AT&T") jurisdiction to answer to the complaint in this district.

26. Plaintiff is informed and upon such information alleges according to the fact, Plaintiffs' claims arise out of Defendants Ohio-related activity including email transmission to and from the state of Ohio. Discovery of the subscribers are necessary to further establish that ('AT&T") through its "aggregators" unlawfully sold Plaintiff's ringtones whereby ("AT&T") received revenue from Plaintiffs' sound recordings and had contact with the state Ohio.

27. Plaintiff is informed and upon such information alleges according to the fact, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Ohio Long Arm Statue, due at least to each Defendant's substantial business in this forum, including: (i) at least a portion of the infringement alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Ohio and in this district.

## VI. FACTUAL ALLEGATIONS

28. Plaintiff is informed and upon such information alleges according to the fact. Plaintiff's Copyrighted sound recordings were automatically subject to copyright protection under 17 U.S.C. § 102(a) when Plaintiff fixed such works in a tangible medium of expression.

Plaintiff received Copyright Registration PA 1-633-253 for sound recordings entitled Slangtones and 40 other titles see Exhibit, which has an effective date of June 17, 2009. These copyright registrations fulfill the jurisdictional requirements of 17 U.S.C § 106A(a) or an *action* instituted under section *411*(b) regarding the copyrighted sound recording. Additional plaintiff's unregistered mark Slangtones is protected under Lanham Act, 15 U.S.C. § 1125.

29.    Plaintiff is informed and upon such information alleges according  to the fact.   Certificate of Copyright Registration constitute prima facie evidence of the validity of the copyrights and the facts stated in the certificates, under 17 U.S.C. § 401(c). Plaintiff registered copyrights are entitled to a statutory presumption of validity.

30.      Plaintiff is informed and upon such information alleges according  to the fact.  Plaintiff developed the sound recording in 2006 developing additional ringtones in 2009 which a copyright registration number:  PA 1-633-253. The sound recordings are copyright protected, pursuant to 17 U.S.C  §  101. Plaintiff was a developer of sound recordings shown  in  the Copyright and registration. Defendant's exploited those rights through various licensing arrangements with their "aggregators."

31.      Plaintiff is informed and upon such information alleges according  to the fact, however Plaintiff is noted as author to the works of the sound recordings which allowed Plaintiff to develop various licensing arrangements  mentioned herein, with third parties namely AT&T's aggregator Mobile Streams. This license generated profits, where Plaintiff, should  have received a correct

account of its royalties.

32.     Plaintiff is informed and upon such information
alleges according to the fact. Plaintiff developed these ringtones
with distribution worldwide  through the Nickels Group and
Mobile Streams and has not enjoyed the true revenue from the sales
of his ringtones.  Plaintiff believes artist and their musical content
are exploited because of  industry accounting practices.
Many "aggregators" distribute artist content to other affiliate
websites  which channel through wireless carriers network,
those aggregators issue to the artist their royalty reports. Many of  the
affiliates were not listed on Plaintiff royalty report. In essence those
affiliates and carriers would enjoy 100% profits of unreported
royalty sales.


33.     Plaintiff is informed and upon such information
alleges according to the fact,  the Internet allows enormous opportunities
for copyright infringement of artist works and  musical compositions to
be infringed and exploited. There are countless numbers of websites
unlawfully selling ringtones and songs of copyrighted works, which
compensation is  never realized by the artist. Plaintiff believes the industry
have a practice "If the artist don't, know don't tell".    Allowing some
companies that license musical works to not report the sales to the
artist.  Now  the only way for the  artist to learn that their works are
being infringed upon, is to do Internet key searches of their works in
hopes to uncover evidence of infringement.

34.    Plaintiff is informed and upon such information alleges according to the fact,  Plaintiff  in 2009 uncovered a vast amount of websites selling Plaintiff's content which was not  on the royalty report provided  by ("AT&T") aggregator Mobile Streams, at which point, Plaintiff then inquired to  Mobile Streams of this new found evidence of Plaintiff's ringtones being sold on sites not being reported   on the royalty reports. However Plaintiff  later to found out AT&T's  "aggregators" unlawfully sold Plaintiff content through its network. Plaintiff then sent an email to Mobile Streams and AT&T's attorney Timothy Johnson of this information indicating that  Plaintiff's ringtones were being sold on sites not being reported on the royalty report.  Mobile Streams denied any claims that they provided Plaintiff's content to the sites in  question. AT&T's attorney Timothy Johnson, indicated via email in paraphrase they could not intervene in that matter.   Plaintiff s' email  to ("AT&T") Johnson and his response would establish ("AT&T") had actual knowledge of the infringing acts, which mentions the Plaintiff's ringtones that were being infringed, who was infringing and when the infringing was occurring. See Ashcroft v. Iqbal 556 U.S. 662, 678 (2009). ("AT&T") knew of the infringement acts took steps to avoid acquiring knowledge.

35.        Plaintiff is informed and upon such information alleges according to the fact,    ("AT&T") was "willfully blind" to the infringement. Plaintiff then retained counsel, who conducted a veracious search and sent out cease and desist letters to all infringing parties it was then discovered that the content was provided to those parties by Mobile Streams.  Plaintiff's legal fees for this investigation and inquiry

amounted to nearly $20,000 dollars, when the AT&T aggregator  Mobile Streams could have saved this expense by simply saying they provided Plaintiff's content to the websites.

36.    Plaintiff is informed and upon such information alleges according  to the fact. Plaintiff is the owner of copyrights in and to the musical compositions at issue and have complied in all respects with the copyright acts and with all other applicable laws in securing copyright registrations and protecting and maintaining exclusive rights in and to Plaintiff' sound recordings. Defendants and their "aggregators" unlawfully made millions from Plaintiffs sound recording which were available for sale and downloaded to millions of subscribers, customers and/or users.

37.    Plaintiff is informed and upon such information alleges according to the fact.  AT&T  introduced Plaintiff to Mobile Streams and on or about June 12, 2006, Plaintiff and Mobile Streams entered into a one-year ringtone license with auto renewed, with the exceptions of cancellation by written notice.  (the "Ringtone License") covering the World. Pursuant to the 2006  ringtone license,  Plaintiff granted a license to Mobile Streams whereby Plaintiff agreed to license its copyrighted sound recordings, for which Plaintiff owned and  controlled the exclusive rights. In accordance with the ("Ringtone License"), Plaintiff granted Mobile Streams the right to transmit the copyrighted sound recordings through its network of Internet providers and affiliates. Plaintiff's copyrighted sound recordings catalogue were available to subscribers for downloading onto wireless devices.

The license agreement was not signed because Plaintiff wanted
additional provisions to be added. Meanwhile Plaintiff acted on a
verbal agreement, which included Plaintiff receiving royalty reports and
payments from Mobile Streams; in return for the grant of rights upon
Plaintiff's sound recordings; whereby Mobile Streams was to pay Plaintiff
an agreed upon royalty rate for each copyrighted sound
recording downloaded by subscribers/customers/users.

38.    Plaintiff is informed and upon such information
alleges according to the fact.  AT&T's aggregator Mobile Streams and
its affiliates were failing to keep accurate records occurring through their
services, and failed to account properly to Plaintiff for the royalties which
were owed. When Plaintiff attempted to exercise its contractual rights
to go online to review the royalty report, access was denied. Plaintiff made
verbal request to examine the books and reports of Mobile Streams, who
refused to give Plaintiff access to material information, interposed
frivolous objections to many of Plaintiff's request, and provided
incomplete and inaccurate documentation.

39.    Plaintiff is informed and upon such  information
alleges according  to the fact, moreover, throughout the term of
the license agreements which existed, AT&T's aggregator
Mobile Streams, blatantly and  willfully infringed upon Plaintiff
numerous valuable copyrights by (i) making Plaintiffs' ringtones
available to affiliates that were not on the royalty report list. (ii)
permitting worldwide downloading of Plaintiffs' ringtones.

40.    Plaintiff is informed and upon such  information  alleges
according to the fact, In light of Mobile Streams material breaches of

the license agreements, Plaintiff did send email notifications to Mobile Streams to remove its content on or about December 23, 2009 in effect cancelling any agreement which may have existed. Although the agreement that existed was unsigned, Plaintiff and Mobile Streams acted on the agreement by virtue of the royalty checks and royalty reports that were received by Plaintiff. Even after the licensing agreement was expired or cancelled, AT&T's "aggregators" continued through to receive revenue from Plaintiffs' ringtones, thereby reaping an unlawful profit from the exploitation of Plaintiffs' sound recordings which were sold through the AT&T network.

41.    Plaintiff is informed and upon such information alleges according to the fact, because AT&T introduced Mobile Streams to Plaintiff, they were made aware through emails regarding the problems associated with their "aggregators." Where Plaintiff would send emails to AT&T's attorney Johnson and other key senior executives. ("AT&T") had actual knowledge of specific acts and failed to consider possible actions. Furthermore Plaintiff evidence should conclude that ("AT&T") was "willfully blind" to the acts that were occurring. Through the emails that was send by Plaintiff regarding the infringement by their "aggregators", should have made officials believed that the infringement was likely occurring on their networks and they took deliberate actions to avoid learning about the infringement.

# A. COUNTS AND CAUSES OF ACTION

## COUNT I

## (FIRST CAUSE OF ACTION COPYRIGHT INFRINGEMENT  1976,  17 U.S.C. §§101,106, 501)

42.    Plaintiff reallege and  incorporate by reference each and every allegation set  forth above within paragraphs 1 through 41, inclusive, as through fully  stated herein.

43.    Plaintiff is informed and upon such information alleges according  to  the fact  per taint to direct and unauthorized copying of plaintiff copyright through AT&T Mobility's involvement to direct copying through their network to ("AT&T") / AT&T Mobility Mobile devices. Plaintiff was unaware that Funmobile/Mobilefunster ("AT&T") "aggregators" were copying and selling Plaintiffs copyrighted sound recording through the ("AT&T") / AT&T Mobility LLC network as such ("AT&T") / AT&T Mobility indirectly had access to plaintiff's work, ." *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993). and (2) the ("AT&T")  work has probative similarity. *See, e.g., Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993),subjecting ("AT&T") to direct infringement. In *Playboy Enterprises, Inc. v. George Frena, d/b/a/ Techs Warehouse BBS Systems and Consulting, and Mark Dyess*, 839 F. Supp.1552 (M.D. Fla. 1993), the court granted summary judgment for direct copyright infringement against a bulletin board service ("BBS") which allegedly did not have any prior knowledge that its users uploaded and downloaded files to its server containing Playboy Enterprises, Inc.'s pictures without plaintiff's consent or other justification. Defendant BBS allegedly removed all infringing files when it was notified and subsequently monitored the server, but the court held lack of knowledge was not a defense.

44.   By the actions alleged above, ("AT&T") / AT&T Mobility LLC has infringed and/or is continuing to infringe 's plaintiff's copyrights  in relating to the copyrighted sound recordings by copying, reproducing, modifying, displaying and/or distributing without plaintiff's authorization, a recently discovered website which appears to be a ("AT&T") / AT&T Mobility LLC aggregator/affiliate Credo Mobile, because ("AT&T") / AT&T Mobility LLC is a carrier operators see Exhibit:

of infringing content as posted on Credo Mobile's/affiliates iLoop Mobile's website: Participating mobile operators:

"Currently T-Mobile, AT&T, and Sprint PCS (not available on all storefronts) support ringtones and wallpapers. AT&T and Sprint also support Java games. We will announce new participating as they join."

http://dev.credoweb.mblade.iloopmobile.com/faq.ftl#Q10

link to plaintiff ringtones See

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63643

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63639

45.   Upon information and belief, after a reasonable opportunity for further investigation through discovery, to obtain sales records since Credo Mobile's counsel did admit Plaintff Slangtones content was indeed on their website/third party iLoop Mobile. Because this content was sold to ("AT&T") / AT&T Mobility LLC  subscribers through copying plaintiff sound recording to their mobile devices, plaintiff feels this is another example of direct copyright infringement by ("AT&T") / AT&T Mobility LLC.

46.     Plaintiff is informed and upon such information alleges according to the fact, ("A plaintiff claiming infringement of the exclusive-distribution right can establish infringement by proof of actual distribution or by proof of offers to distribute, that is, proof that the defendant 'made available' the copyrighted work."); Arista Records, LLC v. Greubel, 453 F. Supp. 2d 961, 969, 971 (N.D. Tex. 2006).

47.     Plaintiff is informed and upon such information alleges According to the fact, early August 2009, Plaintiff discovered through an Internet search, plaintiff's Copyrighted sound recordings; that various websites were not reported on the Mobile Streams royalty report. Moreover, these websites, were exploiting his work unlawfully offering Plaintiffs' sound recordings to millions of subscribers through ("AT&T") / AT&T Mobility network allowing them to benefit from the proceeds. Plaintiff contacted Mobile Streams providing information that various websites were selling Plaintiff's ringtones. ("AT&T's") aggregator Mobile Streams, indicated they were unaware of any websites selling Plaintiffs' content outside the ones on the royalty reports. Subsequently, Plaintiff sought counsel to provide to those websites cease and desist letters. These letters Plaintiff hoped would stop these sites from further infringement. The letters also requested that these websites provide evidence of sales of Plaintiffs' sound recording. ("AT&T's) aggregator Mobile Streams was then made aware that any agreements between Plaintiff was to be cancelled. Whereby, Mobile Streams was then advised to have all content provided to third party providers removed, and that a sales report outlining sales from these sites of Plaintiffs' sound recording, be provided. After Plaintiff's attorneys finished their

copyright infringement investigation it was made known that
Mobile Streams provided  websites unlawfully with Plaintiffs' content.

48.     Plaintiff is informed and upon such information alleges according
to the fact,   It would be understood by one ordinary person that such
communications using counsel in this matter should have made AT&T
"aggregators" aware that any further sales of Plaintiffs' sound
 recordings by any of its third party providers affiliates or
subscribers would constitute willful infringement. Since the letters
the Defendants have enjoyed a financial profit from the sales of
Plaintiffs' sound recording. Whereby ("AT&T") / AT&T Mobility
would continue throughout 2012 to allow its users and or subscribers to
continue to purchase Plaintiffs' Copyright sound recordings ringtones,
 free of reprisal. It is Plaintiffs' intention to seek action
and relief in this matter so that, this may not continue to happen.
Each of ("AT&T") / AT&T Mobility copyright infringement referenced
herein is willful with the meaning of 17.U.S.C. § 106.  Plaintiff,
has provided ("AT&T") / AT&T Mobility  fair notice, were this
complaint allege at lease  some the particular infringing acts and times
of occurrence with specificity.

 49.   Plaintiff is exclusive  owner and author of the sound recordings
claiming infringement.

 50.    Plaintiff is informed and upon such information alleges
according  to the fact,  ("AT&T") / AT&T Mobility profited from
the distribution  and publication of these copyrighted works to
their customers as they collected fees for each transfer/transmission
but failed and /or  refused to compensate Plaintiff as the holder, when

they were aware their "aggregators" unlawfully sold Plaintiffs'
sound recording through their network. The Fourth Circuit and
numerous district court decisions have held that making a
copyrighted work available for distribution to the public
without authorization from the copyright holder violates the
copyright holder's distribution right under §106(3). In Hotaling
v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir.
1997).

51. Plaintiff is informed and upon such information alleges according
to the fact, due to the tremendously large reach of ("AT&T") /

AT&T Mobility there is a tremendous amount of copyright
infringement of Plaintiffs' copyright.

52. Plaintiff is informed and upon such information alleges according
to the fact, ("AT&T") / AT&T Mobility violated the Copyright Act
pursuant to 28 U.S.C. § 501, in that ("AT&T")
AT&T Mobility, never requested from Plaintiff permission to
profit from the sales of Plaintiff's Copyright sound recordings.
("AT&T") / AT&T Mobility never accounted for the amount of transactions
generating from their "aggregators." ("AT&T") / AT&T Mobility,
knowingly facilitated and willfully provided the means for its
"aggregators" to distribute Plaintiffs' copyrighted sound recordings
yet Plaintiff was never paid through these infringing acts, even after they
provided knowledge to the ("AT&T") / AT&T Mobility the infringement was
occurring. Therefore these actions are willful.

53.     Plaintiff is informed and upon such information
alleges according  to the fact , The infringement of each Plaintiffs'
rights in each of the sound recordings and each time the works
were distributed constitutes a separate and distinct act of
infringement subject to 28 U.S.C. § 504.

54.     Plaintiff is informed and upon such information
alleges according to the fact,   as a direct result of the foregoing
conduct, Plaintiff is entitled to damages as against Defendants in
an amount that is  presently unknown.

55.     Plaintiff is informed and upon such information alleges
according  to the fact , As a direct result of ("AT&T") /
AT&T Mobility infringement Plaintiffs are entitled to the
maximum statutory penalties under 17 U.S.C. § 504, in the amount
of $150,000 with respect to each timely registered work that was
infringed, to disgorgement of ("AT&T") / AT&T Mobility profits, and to
any and all other relief the Court deems just and proper under law.

56.   Plaintiff is informed and upon such information alleges according
to the fact , ("AT&T") / AT&T Mobility conduct has caused, and
unless enjoined by this Court, will continue to cause Plaintiff great
and irreparable injury  that cannot be compensated or measured
in money. Plaintiff has no adequate remedy at law. Pursuant to
17 U.S.C § 502, Plaintiff  is entitled to a permanent injunction
prohibiting further infringement of Plaintiffs' copyright.

57.    Plaintiff is informed and upon such information alleges according to the fact, Plaintiff is entitled to their cost, including reasonable attorney fees if one become available pursuant to 17 U.S.C § 505. Plaintiff has suffered economic damage and irreparable harm as a result of ("AT&T") / AT&T Mobility unfair acts hereon.

## COUNT II

### (SECOND CAUSE OF ACTION INDUCEMENT OF COPYRIGHT INFRINGEMENT 17 U.S.C. §106)

58.    Plaintiff reallege and incorporate by reference each and every allegation set forth above within paragraphs 1 through 57, inclusive as through fully stated herein.

59.    Plaintiff is informed and upon such information alleges according to the fact,    ("AT&T") "aggregators" subscribers, users, customers and/or AT&T subscribers, users, customers have directly infringed and were directly infringing Plaintiff's copyrights on a daily basis by, for example purchasing reproductions of sound recordings embodying Plaintiffs' compositions in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. § 106, et seq. The scope of the infringement is massive, encompassing millions of Plaintiff's sound recordings. Defendants are liable for inducing the copyright infringement of their aggregators.

60.    Plaintiff is informed and upon such information alleges according to the fact, Defendants continue to deal with Mobile Streams who uses "aggregators" that appear to depend heavily on infringing uses.

Defendants' have knowledge of a past class actions settlements involving Funmobile/MobileFunster which involved Defendants. Allegations of copyright infringement to unauthorized charges still these companies utilize their network without fearing any repercussions in all likely hood they feel Defendants concerns is to just make profits from wrong doing, for which a blind eye is turned by the Defendants to the infringement activities, where they fail to modify their system to make it less capable of infringement or other wrongful acts by "aggregators".

61.    Plaintiff is informed and upon such information alleges according to the fact, even yet Mobile Streams and Funmobile/Moiblefunster has even evaded or not responded to these proceedings. One of Plaintiff's contacts at Mobile Streams is Shane Gosling who can be reached at Defendants website. Funmobile/Mobilefunster recently removed it site www.mobilefunster.com which also listed Defendants. The site is being

redirected with the following note: "As a result of changes in mobile carrier policies we have discontinued service. AT&T users may continue to access these services through February 14, 2014. If you previously subscribed to this service, your account(s) have been cancelled. Previous subscribers will not receive any further messaging or charges from us after that date, If you have any questions about previous services, messages, or charges, please contact us at help@sendme.com."

62.    Plaintiff is informed and upon such information alleges according to the fact, Defendants willfully ignore knowledge that their aggregators were infringing and were provided with evidence whereby actively facilitating, encouraging and enticing their "aggregators" subscribers/users,

customers to engage in the infringement. Defendants intended to bring about infringement.

63.    Plaintiff is informed and upon such information alleges according to the fact,  Defendants further have induced by, for example not insisting that their aggregators remove Plaintiff's copyrighted sound recordings and maintaining a business model to profit directly from infringing use, including sales to subscribers, users and or customers through their network. Through the conduct described above, Defendants are liable for inducing the infringement described herein. Each violation of  Plaintiff's rights in and to each copyrighted sound recording constitutes a separate and distinct act of copyright infringement. Defendants' infringement has caused substantial damage and harm to Plaintiff. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c) for each of Plaintiff works that have been infringed through Defendants network. Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs'. The Court should therefore increase the award of statutory damages to up to $150,000 per infringed works.

64.    Plaintiff is informed and upon such information alleges according  to the fact,  the identities of  the infringed works and the total number of infringed works will be determined during discovery, and the pleadings adjusted accordingly. As an alternative to statutory damages (and for infringed works that do not qualify for statutory damages if any), Plaintiff at his election prior to profits of the Defendants attributable to the infringement. 17 U.S.C. § 504(a)-(b). Plaintiff is entitled to cost, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505. Defendants'

1
2
3

conduct has caused harm, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money.

4
5
6
7
8
9
10
11
12
13
14

65.    Plaintiff is informed and upon such information alleges according  to the fact,  Plaintiff have no adequate remedy to law. Pursuant to 17 U.S.C § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiffs' copyright. At all times relevant to this action, ("AT&T") have had the right and ability to control and/supervise the infringing conduct of their "aggregators" subscribers, and (ii) have had a direct financial interest in, and derived substantial financial benefit from, the infringement of Plaintiff's  copyrighted sound recordings. Plaintiff has suffered economic damage and irreparable harm as a result of Defendants unfair acts hereon.

15
16
17
18

### COUNT III
### (THIRD CAUSE OF ACTION CONTRIBUTORY COPYRIGHT  INFRINGMENT 17 U.S.C. §106)

19
20
21
22

66.    Plaintiff realleⁿ and  incorporate by reference each and every allegation set forth above within paragraphs 1 through 65, inclusive as through fully stated herein.

23
24
25
26
27
28

67.     Plaintiff is informed and upon such information alleges according  to the fact,  ("AT&T") "aggregators" subscribers, customers and users and/or AT&T subscribers, customers and users purchasing and downloading Plaintiff's copyright sound recording have directly infringed and are directly infringing Plaintiff's copyright on a daily basis by,  for

example purchasing copying sound recordings embodying Plaintiff's copyrighted works in violation of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. §§ 106, 501. The scope of the infringement is massive, encompassing millions of Plaintiffs' sound recordings.

68.    Plaintiff is informed and upon such information alleges according to the fact    ("AT&T") are liable as contributory infringers for the copyright infringement committed through its network, by Defendants because Defendants had actual knowledge of specific acts of the infringement (Exhibit A). *Napster Inc.,* 239 F.3d at 1021. Plaintiff provided to Defendants the link to the tiles that  were being infringed, who infringed them, and when the infringement occurred.

69.    Plaintiff is informed and upon such information alleges according to the fact  ("AT&T") failure to act upon the emails they received regarding their "aggregators" infringing Plaintiffs copyright and receiving a financial benefit,  Defendants are contributory liable for the infringement described herein. Defendants have, in addition to the actions above, provided the network and support and instructions for the infringement through Defendants "aggregators" interactive websites, and has refused to exercise their ability to stop the infringement. Above all Defendants' failure to implement a digital rights management system promotes" infringement.

70.      Plaintiff is informed and upon such information alleges according  to the fact, through the conduct described above, Defendants are contributory liable for the infringement described herein.  Each violation of each Plaintiff's rights in and to each copyrighted sound recording constitutes a separate and distinct act of copyright infringement.

Defendants' infringement has caused substantial damage and harm to Plaintiff. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c) for each of Plaintiff works that have been infringed through Defendants network. Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs'. The Court should therefore increase the award of statutory damages to up to $150,000 per infringed works.

71.    Plaintiff is informed and upon such information alleges according to the fact. The identities of  the infringed works and the total number of infringed works will be determined during discovery, and the pleadings adjusted accordingly. As an alternative to statutory damages (and for infringed works that do not qualify for statutory damages if any), Plaintiff at his election prior to profits of the Defendants attributable to the infringement. 17 U.S.C. § 504(a)-(b). Plaintiff is entitled to cost, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505. Defendants' conduct has caused harm, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money.

72.    Plaintiff is informed and upon such information alleges according to the fact, Plaintiff  have no adequate remedy to law. Pursuant to 17 U.S.C § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of Plaintiffs' copyright. At all times relevant to this action, ("AT&T") have had the right and ability to control and/supervise the infringing conduct of their "aggregators" subscribers, and (ii) have had a direct financial interest in, and derived substantial financial benefit from,

the infringement of Plaintiff's copyrighted sound recordings. Plaintiff has suffered economic damage and irreparable harm as a result of Defendants unfair acts hereon.

## COUNT IV
### (FOURTH CAUSE OF ACTION VICARIOUS
### COPYRIGHT INFRINGEMENT 17 U.S.C. §106)

73.    Plaintiff realleges and incorporate by reference each and every allegation set forth above within paragraphs 1 through 72, inclusive, as through fully stated herein.

74.    Plaintiff is informed and upon such information alleges according to the fact, ("AT&T") "aggregators" subscribers, customers and/ or users AT&T subscribers, customers and/or users purchasing and downloading Plaintiff's sound recordings through AT&T's network, have directly infringed and are directly infringing Plaintiffs' copyrights on a daily a basis by, for example purchasing copying sound recordings embodying Plaintiffs' copyright Act, 17 U.S.C. §§106, 501. The scope of the infringement is massive, encompassing millions of Plaintiffs' sound recordings. Defendants are liable as vicarious infringers for the copyright infringement committed via Defendants network.

75.    Plaintiff is informed and upon such information alleges according to the fact, Defendants have the right and ability to supervise the infringing activity" and had a direct financial interest in the activity.

76.    Plaintiff is informed and upon such information alleges according to the fact, at all times relevant to this action, ("AT&T") (i) have the right and ability to control and/supervise the infringing conduct of their

"aggregators" and/or AT&T subscribers, and (ii) have had a direct financial interest in, and derived substantial financial benefit from, the infringement of Plaintiff's copyrighted sound recordings via the ("AT&T") network. Defendants' ability to not supervise and control the infringing activities of their aggregators subscribers customers and/or AT&T subscribers, customers user is further evidence by the facts alleged herein. Defendants derived direct and substantial benefit from infringement, including offering for sale on their network and/or their "aggregators" website, the value of which is based essentially so subscribers could purchase and download Plaintiff's sound recordings.

77.     Plaintiff is informed and upon such information alleges according  to the fact, the financial benefit derived by  Defendants' is further evidence by the facts alleged herein.  ("AT&T") has or have the ability to control the infringing act of its "aggregators" because they have a contractual right to exclude an aggregator for any reason,  Ninth Circuit, in  Fonovisa v. Cherry Auction. Additionally ("AT&T") had a financial interest in the infringing acts because their billing system are aligned.

78.    Plaintiff is informed and upon such information alleges according  to the fact,  ("AT&T") company instruction to Aggregators Consent Management policy of  Non Compliance For each violation, AT&T reserves all rights and remedies under its agreements with aggregators. These rights and remedies may include (a) suspending existing short codes, (b) restricting aggregators from provisioning new short codes and campaigns, and/or (c) terminating the agreement between AT&T and the aggregator.

79.    Plaintiff is informed and upon such information alleges according to the fact,  through the conduct described above, Defendants are

vicariously liable for the infringement described herein. Each violation of each of Plaintiffs' rights in and to each copyright sound recordings composition constitutes a separate and distinct act of copyright infringement. Defendants' infringement has caused substantial damage to Plaintiff. As a direct and proximate result of Defendants' infringement, Plaintiff is entitled to statutory damages under 17 U.S.C. § 504(c) for each of Plaintiff works that have been infringed through Defendants network. Defendants' infringement is and has been willful, intentional, purposeful, and in disregard of the rights of Plaintiffs'. The Court should therefore increase the award of statutory damages to up to $150,000 per infringed works.

80.   Plaintiff is informed and upon such information alleges according to the fact. The identities of  the infringed works and the total number of infringed works will be determined during discovery, works that do not qualify for statutory damages in any way), Plaintiff at his election prior to profits of the Defendants attributable to the infringement. 17 U.S.C. § 504(a)-(b). Plaintiff is entitled to cost, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505. Defendants' conduct has caused harm, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money. Plaintiff have no adequate remedy to law. Pursuant to 17 U.S.C § 502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of  Plaintiffs' copyright. At all times relevant to this action, ("AT&T") have had the right and ability to control and/or supervise the infringing conduct of their aggregators subscribers, and (ii) have had a direct financial interest in, and derived substantial financial benefit

from, the infringement of Plaintiff's copyrighted sound recordings. Plaintiff has suffered economic damage and irreparable harm as a result of Defendants unfair acts hereon.

## COUNT V
## (FIRTH CAUSE OF ACTION COMMON LAW COPYRIGHT INFRINGEMENT)

81.  Plaintiff realleges and incorporate by reference each and every allegation set forth above within paragraphs 1 through 80, inclusive, as through fully stated herein.

82.  Plaintiff is informed and upon such information alleges according to the fact, Plaintiff's copyrighted sound recordings PA 1-633-253, is subject to *common-law* doctrine of *willful blindness* to *infringement*.

83.  Plaintiff is informed and upon such information alleges according to the fact, Plaintiff efforts to notify AT&T Mobility / ("AT&T") attorney Timothy Johnson through email, regarding the infringement that was occurring on their network, where it was told AT&T Mobility / ("AT&T") could not intervene regarding the actions of vendors (aggregators). Plaintiff even brought concerns of this matter through a telephone conference, initiated by Joseph Beasley so that Plaintiff could speak candidly to AT&T Mobility / ("AT&T") key executives namely Mr. Ralph de la Vega, regarding the infringement occurring over its network, through its aggregators. *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003), in which the defendants argued that the file-swapping technology was designed in such a way that they had no way of monitoring the content of swapped files. They suggested that their inability to monitor the activities of users meant

that they could not be contributing to copyright infringement by the users. The court held that this was willful blindness on the defendant's part and would not constitute a defense to a claim of contributory infringement.

In another case the trial court's decisions turned on a variety of considerations that included issues such as: (1) the specificity of requisite knowledge held by the ISP. The second circuit distinguished between actual knowledge, "Red Flag" awareness, and general knowledge; (2) The issue of willful blindness on behalf of the ISP. A doctrine that may be understood by the common saying, "what I don't know won't hurt me"; and (3) the ISPs' "right and ability" to control the individual infringer's activity.

84. Plaintiff is informed and upon such information alleges according to the fact, Plaintiff efforts to notify AT&T Mobility / ("AT&T"), subsequently it was discovered that alleged copying was being done of Plaintiff's sound recordings their aggregators where using the AT&T Mobility / ("AT&T"), network to sell plaintiff's ringtones.

85. Plaintiff is informed and upon such information alleges according to the fact, as such plaintiff's sound recordings and copying, are being allegedly copied through the AT&T Mobility / ("AT&T") network, which was recently discovered, wireless carrier Credo Mobile were recently served with a cease and desist letter, ("AT&T") see Exhibit of infringing content: as posted on their website: Participating mobile operators:

"Currently T-Mobile, AT&T, and Sprint PCS (not available on all storefronts) support ringtones and wallpapers. AT&T and Sprint also support Java games. We will announce new participating as they join."

http://dev.credoweb.mblade.iloopmobile.com/faq.ftl#Q10

link to plaintiff ringtones See Credo Mobile,Inc. / iloop Mobile Inc.

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63643

http://dev.credoweb.mblade.iloopmobile.com/preview_ringtone?price_id=63639

. 86. Plaintiff is informed and upon such information alleges according to the fact, ("AT&T") / AT&T Mobility's *common-law* doctrine of *willful blindness* to *infringement*, in which ("AT&T") / AT&T Mobility ignored multiple notices to infringing conduct. Plaintiff possesses the exclusive rights to sell, copy, distribute and perform these sound recordings. The *willful blindness* to *infringement*, of Plaintiff rights by AT&T Mobility / ("AT&T") network in each of its sound recordings. The infringement of Plaintiff's rights by ("AT&T") / AT&T Mobility in each of its sound recordings constitutes a separate and distinct act of *willful blindness* to *infringement*. As a direct and proximate result of ("AT&T") / AT&T Mobility violation of Plaintiffs' rights in and to the sound recordings, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff is entitled to recover all proceeds and other compensation received or to receive by Defendants arising from its infringement of Plaintiffs' sound recordings, and is entitled to an accounting of as certain the amount of such profits and compensation.

87. Plaintiff is informed and upon such information alleges according to the fact, ("AT&T") / AT&T Mobility acts of *willful blindness* to *infringement* are willful, intentional and purposeful, in disregard of Plaintiffs' rights, and Plaintiff is entitled to punitive and statutory damages in addition to actual damages. Plaintiff is further entitled to cost and attorney fees pursuant to 17 U.S.C § 505. Defendants and/or

their "aggregators" subscribers, customers and/or users purchasing and downloading Plaintiffs' copyrights on a daily basis by, for example purchasing copying Plaintiffs' sound recordings have through the ("AT&T") / AT&T Mobility network directly infringed Plaintiffs' copyrights on a daily basis by, for example purchasing copying sound recordings embodying Plaintiffs' copyrighted works in violation of  Plaintiff's copyright. Plaintiff has suffered economic damage and irreparable harm as a result of ("AT&T") / AT&T Mobility unfair acts hereon.

## COUNT VI
### (SIXTH  CAUSE OF ACTION FEDERAL UNFAIR COMPETITION UNDER LANHAM ACT  15.U.S.C§ 125))

88.    Plaintiff incorporates by reference paragraphs 1 through 86 above as though fully set forth herein.

89.    Plaintiff is informed and upon such information alleges according  to the fact,   Plaintiff owns the mark Slangtones, is the unregistered mark of Plaintiff protected under federal Lanham Act, 15 U.S.C. § 1125 according  to the fact Plaintiff owned and marketed its website www.slangtones.com in commerce however because of the infringement occurring plaintiff's removed this site, not withstanding factures ("AT&T") / AT&T Mobility through its aggregators plaintiff's mark Slangtones was being falsely mislead and representation of fact, that plaintiff's Slangtones product was made available on their aggregators/affiliates website with the AT&T logo, would lead consumers that plaintiff mark was authorized to be

make available for sale and thus ("AT&T") / AT&T Mobility benefited financially for his misleading representation of plaintiff's mark and ringtone products.

90. Plaintiff is informed and upon such information alleges according to the fact having plaintiff mark on ("AT&T") / AT&T Mobility aggregators website, actually deceived, a substantial segment of plaintiff's potential customers.

91. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility false and misleading sales to its AT&T mobile users through its aggregator website where plaintiffs mark Slangtones was used in injure both consumers and Plaintiff.

92. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's mark, reputation and goodwill, for which there is no adequate remedy at

law. Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining ("AT&T") / AT&T Mobility, its agents, employees, representatives and all persons acting in concert with ("AT&T") / AT&T Mobility is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

94. Plaintiff is informed and upon such information alleges according to the fact Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from ("AT&T") / AT&T Mobility the damages sustained by plaintiff as a result of ("AT&T") / AT&T Mobility's acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of ("AT&T") / AT&T Mobility's acts.

95. Plaintiff is informed and upon such information alleges according to the fact Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from ("AT&T") / AT&T Mobility's Plaintiff the gains, profits and advantages that ("AT&T") / AT&T Mobility's has obtained as a result of ("AT&T") / AT&T Mobility's acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages ("AT&T") / AT&T Mobility's has obtained by reason of ("AT&T") / AT&T

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mobility's acts.

96. Pursuant to 15 U.S.C. § 1117, Plaintiff is

further entitled to recover the costs of this action. Moreover, Plaintiff is

informed and believes, and on that basis alleges, that ("AT&T") / AT&T

Mobility's conduct was undertaken willfully and with the intention of causing

confusion, mistake or deception, making this an exceptional case entitling

Plaintiff to recover additional damages and reasonable attorneys' fees.

## COUNT VII
## (SEVENTH CAUSE OF ACTION UNFAIR
## COMPETITION UNDER OHIO LAW § 4165.02)

97.    Plaintiff reallege and  incorporate by reference each and every

allegation set forth above within paragraphs 1 through 96, inclusive, as

through fully stated herein.

98.   Plaintiff is informed and upon such information alleges according to

the fact,  ("AT&T") / AT&T Mobility did not  take steps to stop their

aggregators, affiliates ect, preventing them from the unauthorized selling

of plaintiff's ringtones through their network; which deceived

consumers that plaintiff ringtones and mark were ("AT&T") / AT&T

Mobility's  ; because the AT&T logo appeared on the aggregators website

for anyone who wanted to select and purchase plaintiff's ringtones. Yet the fact plaintiff had its own site www.slangtones.com, for which the unauthorized practice to copy plaintiff ringtones through ("AT&T") / AT&T Mobility network by aggregators affiliates competed against the plaintiff's own use of the same property." Mp3Board, Inc., 2002 WL 1997918, at *12 (quoting Roy Exp. Co., 672 F.2d at 1105). Ohio law, unfair competition "ordinarily consists of representations by one person, for the purpose of deceiving the public, that his or her goods are those of another." Landskroner v. Landskroner, 154 Ohio App.3d 471, 490-491, 797N.E.2d 1002, 1017 (Ohio Ct. App. 2003).

99. Plaintiff is informed and upon such information alleges according to the fact, ("AT&T") / AT&T Mobility was fully aware after being in direct contact with plaintiff for more than 7 years, plaintiff was intending to becoming an aggregators, unbeknownst to plaintiff its ringtones were being unauthorized marketed through ("AT&T") / AT&T Mobility aggregators for which they were aware thus plaintiff was deceived.

100. Plaintiff is informed and upon such information alleges according to the fact, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff is entitled to recover all proceeds and other compensation received or to receive by ("AT&T") / AT&T Mobility arising from its Unfair Competition Under Ohio Law of Plaintiffs' sound recordings, and is entitled to an accounting to ascertain the amount of such profits and compensation. Plaintiff has suffered economic damage and irreparable

harm as a result of ("AT&T") / AT&T Mobility unfair acts hereon. ("AT&T") / AT&T Mobility acts are willful, which was purposeful, in disregard of Plaintiffs' rights, and Plaintiff is entitled to punitive and statutory damages in addition to actual damages. Plaintiff is further entitled to cost and attorney fees pursuant to 17 U.S.C § 505.

**COUNT VIII**
**(EIGHTH CAUSE OF ACTION DECEPTIVE AND UNFAIR**
**TRADE PRACTICES UNDER OHIO LAW**
**OHIO REV. CODE § 4165.02(A)**

101. Plaintiff reallege and incorporate by reference each and every allegation set forth above within paragraphs 1 through 100, inclusive, as through fully stated herein.

102. Plaintiff is informed and upon such information alleges according to the fact 's plaintiff's use of and rights in the Slangtones Mark predates ("AT&T") / AT&T Mobility' use of a similarly confusing mark used in the sales of plaintiff ringtone through its network by its aggregators.

103. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility' actions in connection with plaintiff ringtones and the use of its mark Slangtones being sold through its network by its aggregators who were apart of these actions including newly discovered Credo Mobile affiliates, is likely to deceive and cause confusion and mistake among consumers as to the source or origin of those goods provided by or sold by ("AT&T") / AT&T Mobility' because their

logo appeared on the aggregators website and plaintiff's content that was being copied and sold which was unauthorized.

104. Plaintiff is informed and upon such information alleges according to the fact plaintiff has never authorized, licensed or otherwise condoned or consented to ("AT&T") / AT&T Mobility' use of the Slangtones Mark in connection with their aggregators who were part of these actions or mentioned herein as newly discovered aggregators/affiliates.

105. Plaintiff is informed and upon such information alleges according to the fact The conduct of ("AT&T") / AT&T Mobility', as alleged herein, constitutes unfair competition under the common law of Ohio.

106. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility' conduct has been deliberate and willful and has been committed with the intent to cause confusion and mistake, to deceive the public, and/or to misrepresent the affiliation, connection or sponsorship of the ("AT&T") / AT&T Mobility' commercial activities with plaintiff.

107. Plaintiff is informed and upon such information alleges according to the fact ("AT&T") / AT&T Mobility' will continue their acts of unfair competition, causing irreparable injury to plaintiff, unless such activities are enjoined by this Court.

.

## COUNT IX

## (NINTH CAUSE OF ACTION UNJUST ENRICHMENT)

108. Plaintiff reallege and incorporate by reference each and every

allegation set forth above within paragraphs 1 through 106, inclusive, as through fully stated herein.

109. Plaintiff is informed and upon such information alleges according to the fact there was no written contract between plaintiff and ("AT&T") / AT&T Mobility, however their actions in connection with its aggregators and its direct contacts with plaintiff for over several years which given rise to an *implied contract between the parties, when one side has provided a benefit for which it should be compensated. Davis v. Lawyers Title Ins. Corp., No. 06-357, 2007 WL 782158, at *5 (N.D. Ohio Mar. 13, 2007)*.. Plaintiff was working toward meeting the requirements of becoming a direct aggregator, affiliate to ("AT&T") / AT&T Mobility', thus a transaction by plaintiff submitting it's ringtones to ("AT&T") / AT&T Mobility' where plaintiff was provided with a short code later to have its ringtones to be test marketed in 2006 to determine if its subscribers would have favorable liking to plaintiff's sound recording followed by plaintiff receiving the sales report of the test market sales, subsequently it was discovered through its aggregators direct copying of plaintiff's ringtones through the network of ("AT&T") / AT&T Mobility' who received an unjust enrichment under Ohio law.

110. Plaintiff is informed and upon such information alleges according to the fact 's although plaintiff had efforts to become an aggregator as mentioned in these proceedings, ("AT&T") / AT&T Mobility' received a benefit/revenue of the unauthorized sales of plaintiff's valued sound recordings without payment or restitution to plaintiff, where ("AT&T") / AT&T Mobility' had knowledge of such a benefit being paid to them by its aggregators in conjunction with the unauthorized

sales of plaintiff' ringtones being sold by its aggregators/affiliates through its network. Unjust enrichment occurs when a party retains money or benefits which, in justice and equity, belong to another. Hummel v. Hummel (1938), 133 Ohio St. 520, 528; Liberty Mut. Ins. Co. v. Indus. Comm. (1988), 40 Ohio St.3d

109, 110-111.


111.   Plaintiff is informed and upon such information alleges according  to the fact. Plaintiff  introduced evidence showing  that plaintiff holds a valid copyright for its sound recordings in connection with these actions of which were infringed and sold through the network  of ("AT&T") / AT&T Mobility' by its aggregators Mobile Streams Inc., Funmobile Ltd and Mobilefunster Inc. and now newly discovered allegedly Credo Mobile/iLoop Mobile Inc.; where plaintiff should have or should receive a royalty interest that ("AT&T") / AT&T Mobility'  accepted and retained the benefit conferred by plaintiff, despite repeated requests by plaintiff prior to any actions that it aggregators mentioned Mobile Stream, Inc. Funmobile Ltd and Mobilefunster, Inc.  were infringing on its ringtones, this provided ("AT&T") / AT&T Mobility' at best enough information to investigate the allegations, however plaintiff through its own investigation found out ("AT&T") / AT&T Mobility'  had knowledge of the activities or should have reasonability known of the infringing

activity, plaintiff sound recording were being copied through its

network, for which plaintiff never received payment for which it was

entitled, for which it would be unjust and inequitable for ("AT&T") /

AT&T Mobility' to retain the royalties to which he was not entitled.

112.  Plaintiff is informed and upon such information alleges according  to

the fact,  Plaintiff has suffered damages in an amount to be proven at

trial. Plaintiff is entitled to recover all proceeds and other compensation

received or to receive by ("AT&T") / AT&T Mobility arising from its Unjust

enrichment of Plaintiffs' sound recordings, and is entitled to an accounting

to ascertain the amount of such profits and compensation. Plaintiff has

suffered economic damage and irreparable harm as a result of ("AT&T") /

AT&T Mobility unfair acts hereon. ("AT&T") / AT&T Mobility acts  are willful,

which was purposeful, in disregard of Plaintiffs' rights, and Plaintiff is

entitled to punitive and statutory damages in addition to actual damages.

Plaintiff is further entitled to cost and attorney fees pursuant to 17 U.S.C §

505.

# PRAYER FOR RELIEF
## (CONSTRUCTIVE TRUST ACCOUNTING)

("AT&T") / AT&T Mobility hold those commercial profits and personal gains which have accrued to those as a result of infringement and other wrongful acts described herein as constructive  trustees of those commercial profits and personal gains, for the benefit of Plaintiff. Plaintiff seek an accounting of said funds, and an order declaring that Defendants ("AT&T") / AT&T Mobility hold said funds in trust for Plaintiff.

WHEREFORE, Plaintiff respectfully request judgment against ("AT&T") / AT&T Mobility as follows:

1. For general damages in an amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial sufficient to punish and deter Defendant form engaging in such activity in the future;

3. For the maximum statutory damages under 17 U.S.C. § 504(c), in the amount of 150,000 with respect to each timely registered work that was infringed.

4. For damages and disgorgement of lost profits, in the amount to be proven at trial;

5. For injunctive relief as against Defendants;

6. For an accounting;

7. For an order declaring that ("AT&T") / AT&T Mobility hold funds which they have gained as a result of their wrongful acts as constructive trustees for the benefit of Plaintiff;

8. For any applicable and appropriate  pre-and post-judgment interest;

9.  For any other relief that the Court deems just and proper.

DATED: October 6th, 2014

Respectfully submitted,

By: /s/ Blake Best
Pro Se/Plaintiff
5392 Northbend Road
Cincinnati, Ohio 45247
Email: blake@bcs24hrs.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a jury as to all issues properly so tried.

DATED: October 6th, 2014

Respectfully submitted,

By: /s/ Blake Best
Pro Se/Plaintiff
5392 Northbend Road
Cincinnati, Ohio 45247
Email: blake@bcs24hrs.com

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff hereby certify on  October 6th, 2014, I filed  a copy of the foregoing instrument with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification to the following attorney(s) of record:

Daniel B. Miller (0080767)

Trial Attorney

Porter, Wright, Morris & Arthur, LLP

41 S. High Street, 29th Floor

Columbus, Ohio 43215

Telephone: (614) 227-2101

Fax: (614) 227-2100

Email: dbmiller@porterwright.com


Attorney for Defendants AT&T, Inc. and AT&T Mobility LLC

OF COUNSEL:

David S. Bloomfield Jr. (0068158)

PORTER, WRIGHT, MORRIS & ARTHUR, LLP

41 S. High Street, 29th Floor

Columbus, Ohio 43215

Fax: (614) 227-2100

Email: dbloomfield@porterwright.com


Edward L. Bettendorf (0025924)

45 Erieview Plaza, Suite 1400

Cleveland, Ohio 44114

Telephone: (216) 544-7420

Fax: (216) 822-0240

Email: EB5312@att.com

DATED: October 6th, 2014

Respectfully submitted,

By: /s/ Blake Best
Pro Se/Plaintiff
5392 Northbend Road
Cincinnati, Ohio 45247
Email: blake@bcs24hrs.com